# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re: | |
| | **Chapter 11** |
| BT PRIME LTD., | |
| | **Case No. 15-10745-FJB** |
| Debtor. | |
| _____ | |
| | |
| BT PRIME LTD. | |
| | |
| Plaintiff, | **Adversary Proceeding** |
| | **No. 16-1178** |
| v. | |
| | |
| BOSTON TECHNOLOGIES POWERED BY | |
| FOREXWARE LLC f/k/a FOREXWARE LLC, | |
| CURRENCY MOUNTAIN HOLDINGS LIMITED | |
| f/k/a FOREXWARE MALTA HOLDINGS LTD., | |
| FXDIRECTDEALER, LLC, FXDD MALTA LTD., | |
| CURRENCY MOUNTAIN HOLDINGS LLC, | |
| NUKKLEUS, INC., NUKKLEUS BERMUDA | |
| LIMITED, and CURRENCY MOUNTAIN | |
| HOLDINGS BERMUDA, LTD. | |
| | |
| Defendants. | |
| _____/ | |

## MOTION OF DEFENDANTS FOREXWARE LLC, FXDIRECTDEALER, LLC, CURRENCY MOUNTAIN HOLDINGS LIMITED, AND FXDD MALTA LTD. FOR LEAVE TO APPEAL THE COURT'S ORDER ALLOWING MOTION TO AMEND

| | |
|---|---|
| **SAUL EWING ARNSTEIN & LEHR LLP** | **SHIPKEVICH PLLC** |
| 131 Dartmouth Street | 165 Broadway, STE 2300 |
| Boston, Massachusetts 02116 | New York, New York 10006 |
| Telephone:    (617) 723-3300 | Telephone:    (212) 252-3003 |
| Facsimile:    (617) 723-4151 | Facsimile:    (888) 568-5815 |
| steven.reingold@saul.com | ssavic@shipkevich.com |
| | |
| *Attorneys for Defendants Forexware LLC and* | *Attorneys for Defendants Currency Mountain* |
| *FXDirectDealer, LLC* | *Holdings and FXDD Malta* |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

QUESTIONS TO BE PRESENTED ............................................................... 3

STATEMENT OF FACTS ............................................................................. 3

THE STANDARD FOR LEAVE TO APPEAL............................................... 7

ARGUMENT ............................................................................................... 8

I.      THE ISSUES PRESENTED INVOLVE CONTROLLING QUESTIONS
        OF LAW................................................................................................ 8

II.     SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION
        EXIST BECAUSE THE BANKRUPTCY COURT'S ORDER
        CONTRADICTS BINDING FIRST CIRCUIT AUTHORITY. ......................... 10

        A.    The Bankruptcy Court Order Is in Clear Opposition to the First
              Circuit Law Applying the Rule 16(b)(4) Standard in Determining
              Whether the Amendment Should be Permitted When Made
              Almost Ten Months After the Applicable Deadline Set Out in the
              Scheduling Order. ...................................................................... 11

        B.    The Bankruptcy Court's Refusal to Consider Whether the New
              Claims Are Time-Barred Contradicts First Circuit Law Requiring
              Courts to Only Grant Amendments That Would Not Be Futile. ................. 12

III.    AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE
        ULTIMATE TERMINATION OF THE LITIGATION. .................................... 14

CERTIFICATION PURSUANT TO MLBR 9013-1(b).................................. 15

CONCLUSION............................................................................................ 15

FEDERAL RULE OF BANKRUPTCY 8013(f)(3)(A) CERTIFICATION ................... 18

CERTIFICATE OF SERVICE ..................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Adorno v. Crowley Towing & Transp. Co.*,
  443 F.3d 122 (1st Cir. 2006) ................................................................................. 13

*Berthiaume v. Enterprise Rent-A-Car*,
  164 F.R.D. 121 (D. Mass. 1995) ............................................................................ 10

*Brooks v. Citizens Bank of Mass.*,
  Civil No. 19-12231-LTS, 2020 WL 837375 (D. Mass. Feb. 20, 2020) ................... 13

*Cabral v. Sullivan*,
  757 F. Supp. 107 (D. Mass. 1991) ......................................................................... 14

*EMC Corp. v. Pure Storage, Inc.*,
  310 F.R.D. 194 (D. Mass. 2015) ............................................................................ 11

*Enron Corp. v. Springfield Assocs., L.L.C. (In re EnronCorp.)*,
  No. 01-16034, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) .................................... 9

*In re Clark-Franklin-Kingston Press, Inc.*,
  Nos. 90-11231-MLW, 90-11232-MLW, 1993 WL 160580 (D. Mass. Apr. 21, 1993) ............. 7

*In re Envtl. Careers Org., Inc.*,
  No. 12-10928-GAO, 2013 WL 936501 (D. Mass. Mar. 11, 2013) ........................... 7

*In re Hechinger Inv. Co.*,
  297 B.R. 390 (Bankr. D. Del. 2003) ...................................................................... 13

*In re Lewis*,
  271 B.R. 877 (B.A.P. 10th Cir. 2002) ...................................................................... 8

*In re Marvel Entm't Grp., Inc.*,
  209 B.R. 832 (D. Del. 1997) .................................................................................... 7

*In re Salem Suede, Inc.*,
  221 B.R. 586 (D. Mass. 1998) ................................................................................. 8

*In re Trump*,
  874 F.3d 948 (6th Cir. 2017) ................................................................................. 10

*In re Trump*,
  928 F.3d 360 (4th Cir. 2019) ................................................................................. 10

*Jones v. FMA Alliance Ltd.*,
  978 F. Supp. 2d 84 (D. Mass. 2013) ...................................................................... 13

*Klinghoffer v. S.N.C. Achille Lauro,*
    921 F.2d 21 (2d Cir. 1990) ................................................................................. 8

*Lawson v. FMR LLC,*
    670 F.3d 61 (1st Cir. 2012) ............................................................................... 8

*Mansor v. JPMorgan Chase Bank, N.A.,*
    270 F. Supp. 3d 445 (D. Mass. 2017) .............................................................. 11

*Natale v. Pfizer, Inc.,*
    379 F. Supp. 2d 161 (D. Mass. 2005) .............................................................. 10

*O'Connell v. Hyatt Hotels of Puerto Rico,*
    357 F.3d 152 (1st Cir. 2004) ............................................................................ 11

*Philip Morris Inc. v. Harshbarger,*
    957 F. Supp. 327 (D. Mass. 1997) ..................................................................... 8

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) ........................................................................... 10

*Retirement Bd. of Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New
    York Mellon,*
    No. 11 CIV. 5459 WHP, 2013 WL 593766 (S.D.N.Y. Feb. 14, 2013) ............... 9, 14

*Reynolds v. U.S. Internal Revenue Serv.,*
    Civil Action No. 13-10788-NMG, 2014 WL 201610 (D. Mass. Jan. 15, 2014) ........ 7, 8

*Roberts v. Islam,*
    129 F. Supp. 3d 1 (D. Mass. 2015) ................................................................... 13

*S. Orange Chiropractic Ctr., LLC v. Cayan LLC,*
    Civil Action No. 15-13069-PBS, 2016 WL 3064054 (D. Mass. May 31, 2016) ........ 14

*Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.,*
    714 F.3d 62 (1st Cir. 2013) .............................................................................. 11

*Spaulding v. CitiFinancial Servicing, LLC,*
    Civil Action No. 16-30173-MGM, 2018 WL 1698263 (D. Mass. Apr. 6, 2018) ........ 13

*Standard Fire Ins. Co. v. Crosby Yacht Yard, Inc.,*
    Civil No. 04-12244-GAO, 2007 WL 465152 (D. Mass. Feb. 8, 2007) .................. 13

*Steir v. Girl Scouts of the USA,*
    383 F.3d 7 (1st Cir. 2004) ................................................................................ 11

*The Hilsinger Co. v. Kleen Concepts, LLC,*
    164 F. Supp. 3d 195 (D. Mass. 2016) ............................................................... 13

*Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*,
  358 F. Supp. 2d 347 (S.D.N.Y. 2005) ................................................................. 15

*Trans-Spec Truck v. Caterpillar*,
  524 F.3d 315 (1st Cir. 2008) ............................................................................ 12

*United Air Lines, Inc. v. Gregory*,
  716 F. Supp. 2d 79 (D. Mass. 2010) ................................................................. 14

*Watson v. Boyajian*,
  309 B.R. 652 (B.A.P. 1st Cir. 2004) ................................................................. 14

**Statutes**

28 U.S.C. § 1292 ................................................................................................... 7

28 U.S.C. § 158 ..................................................................................................... 1

**Rules**

Fed. R. Bankr. P. 7016 ........................................................................................ 12

Fed. R. Bankr. P. 8004 .......................................................................................... 1

Fed. R. Bankr. P. 8005 .......................................................................................... 1

Fed. R. Civ. P. 12 ........................................................................................... 4, 13

Fed. R. Civ. P. 15 ......................................................................................... passim

Fed. R. Civ. P. 16 ......................................................................................... passim

Fed. R. Civ. P. 26 .................................................................................................. 4

MLBR 7016-1 ...................................................................................................... 11

MLBR 9013-1 ...................................................................................................... 15

**Treatises**

16 Charles A. Wright et al., Federal Practice & Procedure § 3930 (2d ed. 2012) ......................... 9

16 Charles Alan Wright et al., Federal Practice and Procedure § 3930 (3d ed. 1998) ................ 14

Defendants Forexware LLC ("Forexware US"), FXDirectDealer, LLC ("FXDD US" and, together with Forexware US, the "US Defendants"), Currency Mountain Holdings Limited ("CMH Malta"), and FXDD Malta Ltd. ("FXDD Malta" and, together with CMH Malta, the "Malta Defendants") (the US Defendants and the Malta Defendants, the "Defendants") have, contemporaneously herewith, filed a Notice of Appeal and  Statement of Election pursuant to 28 U.S.C. § 158(a)(3) and Rules 8004 and 8005 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  Defendants seek to appeal the April 15, 2020, Proceeding Memorandum and Order (Dkt. No. 162, a copy of which is attached hereto as Exhibit A, the "Order Allowing Motion to Amend") of the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). The Order Allowing Motion to Amend granted in part and denied in part the March 16, 2020, Motion for Leave to Amend Complaint (Dkt. No. 150, the "Motion to Amend") filed by plaintiff BT Prime Ltd. ("BT Prime"), which sought to add Currency Mountain Holdings LLC ("CMH US"), Nukkleus, Inc. ("Nukkleus US"), Nukkleus Bermuda Limited ("Nukkleus Bermuda"), and Currency Mountain Holdings Bermuda, Ltd. ("CMH Bermuda" and together with CMH US, Nukkleus US, and Nukkleus Bermuda, the "New Defendants") as defendants in this adversary proceeding and to add three new causes of action.

## PRELIMINARY STATEMENT

The Court should grant Defendants leave to appeal as the Bankruptcy Court, respectfully, erred in granting the Motion to Amend. The Bankruptcy Court failed to apply the "good cause" standard required under Rule 16(b)(4) of the Federal Rules of Civil Procedure (the "Rules"), notwithstanding the proposed amendment being sought almost ten months after the applicable deadline. Moreover, the Bankruptcy Court erred in refusing to consider whether the proposed amendment would be futile given that the cause of action against Nukkleus US, Nukkleus

1

Bermuda, and CMH Bermuda is being asserted after the expiration of the applicable statute of limitations.[1]

The Bankruptcy Court granted the Motion to Amend in large part, notwithstanding the fact that it was made nearly ten months after the deadline for amending pleadings and adding parties. The Order Allowing Motion to Amend relied on the finding that there was "no dilatoriness or bad faith on part of the Plaintiff" and that the amendment would not "unduly prejudice the existing defendants." But the law is clear that the center of the inquiry is whether a party seeking to amend a pleading acted diligently and showed good cause for the amendment. Not only did BT Prime fail to show that it acted diligently, it failed to even mention it, let alone argue it, in the Motion to Amend or in the reply that it filed to Defendants' objection.

The Bankruptcy Court also failed to consider whether the amendment would be futile as the law requires. Instead, the Bankruptcy Court decided not to consider whether the claim against Nukkleus US, Nukkleus Bermuda, and CMH Bermuda is outside of the statute of limitations, noting that any "[a]rguments of futility are for the new parties to argue; the court will not adjudicate the statute of limitations prematurely." The controlling First Circuit law, however, requires that an amendment be granted only when the court determines that it would not be futile.

---

[1] The Bankruptcy Court also made factual errors regarding when and how BT Prime obtained information on which one of the new claims is premised, noting that the information regarding CMH US was obtained during discovery when in fact that information was disclosed several years ago. (*See* Corporate Ownership Statement of Defendant FXDirectDealer, LLC, dated January 18, 2017, Dkt. No. 22 ("FXDD Corporate Disclosure Statement").) Similarly, the Bankruptcy Court accepted BT Prime's written representation that it learned of Nukkleus US, Nukkleus Bermuda, and CMH Bermuda through discovery even though BT Prime stated during the hearing on the Motion to Amend, in response to a question posed by the Bankruptcy Court, that there was no document produced during discovery that led it to seek to include those parties as defendants.

An immediate appeal would undoubtedly streamline litigation and shorten the time required for trial. If successful, the appeal would terminate the adversary proceeding as to the New Defendants, and no additional time and resources will be required on responsive pleadings, discovery, or dispositive motions.

For these reasons, and for the reasons discussed below, Defendants respectfully submit that the Court should grant Defendants leave to appeal the straight-forward issues of controlling law that are raised by the Order Allowing Motion to Amend.

## QUESTIONS TO BE PRESENTED

1. Whether the Bankruptcy Court erred in failing to apply the "good cause" standard under Rule 16(b)(4) in granting the Motion to Amend Complaint to add four new defendants, which BT Prime filed almost ten months after the applicable deadline.

2. Whether the Bankruptcy Court erred in refusing to consider whether the proposed amendment would be futile—due to one of the added claims being asserted well after the expiration of the applicable statute of limitations.

## STATEMENT OF FACTS

*Procedural History*

On March 2, 2015, BT Prime filed a Voluntary Petition for relief under chapter 11 of title 11 of the United States Code and commenced the underlying bankruptcy case. *See* Case No. 15-10745 (FJB) (the "Bankruptcy Case"). On October 19, 2016, BT Prime commenced this adversary proceeding by filing a sixteen-count Complaint against Forexware US, FXDD US, CMH Malta, and FXDD Malta. (Dkt. No. 1 (the "Complaint").)

On January 18, 2017, the US Defendants and the Malta Defendants each filed a Motion to Dismiss (Dkt. Nos. 20, 25) and FXDD US filed the Corporate Ownership Statement of Defendant FXDirectDealer, LLC, which disclosed CMH US as FXDD US's parent company

(Dkt. No. 22 ("FXDD Corporate Disclosure Statement")). On March 8, 2017, the Bankruptcy Court held a hearing on the US Defendants' Motion to Dismiss and the Malta Defendants' Motion to Dismiss. (Dkt. Nos. 77, 78, 86, and 90.)

On March 29, 2019—over two years later—the Bankruptcy Court issued its decision denying in part and granting in part Defendants' motions to dismiss. (Dkt. No. 107 (the "Memorandum and Decision")). The Bankruptcy Court dismissed Count XVI of the Complaint, which sought an accounting, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, but otherwise denied the motions.

*Scheduling Order and Discovery*

On April 16, 2019, the Bankruptcy Court entered a Scheduling and Pretrial Order to set deadlines during the Adversary Proceeding. (Dkt. No. 115 ("Scheduling Order")). The Scheduling Order set May 31, 2019, as the deadline for amending pleadings and joining additional parties. The Scheduling Order stated that "**Unless otherwise ordered, the parties shall comply with all obligations and deadlines set forth herein**." (Scheduling Order (emphasis in original).)

On May 6, 2019, all of the parties filed—and the Bankruptcy Court so ordered—a Joint Rule 26(f) Conference Report, which *inter alia* altered the discovery plan and made changes to the Scheduling Order regarding discovery. (Dkt. Nos. 120, 121.) The Joint Rule 26(f) Conference Report did not request an extension of the time to file amended pleadings or to join parties and the Bankruptcy Court did not order an extension of either the date by which amended pleadings must be filed or new parties must be joined. The parties jointly moved to modify certain discovery and pre-trial deadlines on two subsequent occasions (Dkt. Nos. 128, 144), but

have never modified the deadline for amending the pleadings and joining additional parties, which remained May 31, 2019.

*The Motion to Amend*

On March 16, 2020, BT Prime filed the Motion to Amend. The Motion to Amend sought to add four new parties to the adversary proceeding—CMH US, Nukkleus US, Nukkleus Bermuda, and CMH Bermuda—and to add three new counts to the Complaint—one for declaratory relief against Forexware US, FXDD US, CMH Malta, FXDD Malta, and newly added CMH US—in essence adding CMH US to an existing cause of action—that all five entities are a single integrated business liable for the obligations of Forexware US[2], one for declaratory relief that Nukkleus US, Nukkleus Bermuda, and CMH Bermuda are all a mere continuation of Forexware US and therefore liable for its obligations, and one for an equitable accounting under Massachusetts law to replace the previously dismissed Count XVI.

On March 30, 2020, the US Defendants and the Malta Defendants jointly filed an objection to the Motion to Amend. (Dkt. No. 152.) On April 1, 2020, the Bankruptcy Court ordered a telephonic hearing on the Motion to Amend for April 14, 2020, and the Bankruptcy Court requested that "the Parties attempt to confer briefly 48 hours prior to the scheduled hearing." (Dkt. No. 153.) On April 10, 2020—two business days before the April 14, 2020, hearing—the parties conferred over the phone and, for the first time, BT Prime indicated that it would be filing a reply to the Motion to Amend, which BT Prime filed later that day. (Dkt. No. 155.) On April 13, 2020, the US Defendants and the Malta Defendants jointly filed their response to BT Prime's reply. (Dkt. No. 161.)

---

[2] There was previously no claim against FXDD Malta seeking to hold it jointly and severally liable for potential liability of other defendants.

*The Hearing and Decision on the Motion to Amend*

On April 14, 2020, the Bankruptcy Court held a telephonic hearing on the Motion to Amend. ("Hearing".[3]) During the Hearing, BT Prime conceded that despite its written representations that it only learned of the New Defendants through discovery, its proposed claims were based on information available in the "public forum" that BT Prime claimed it only located after unidentified discussions with Defendants' counsel (thus evidencing a lack of diligence on its part), and failed to acknowledge that the identity of CMH US was disclosed in the Corporate Disclosure Statement that FXDD US filed in January 2017, opting instead to attempt to obfuscate the issue by alleging that it found other, unspecified information in the "public forum."

Despite these shortcomings, on April 15, 2020, the Bankruptcy Court granted the Motion to Amend as to its request to assert the two declaratory judgment counts; it denied the Motion to Amend to include the new count for an accounting, finding that BT Prime could have asserted it in a timely fashion but failed to do so. The Order Allowing Motion to Amend was issued one day after the Hearing, was two pages long, had no citations to case law, did not apply Rule 16(b)(4)'s "good cause" standard in lieu of Rule 15(a)(2)'s "freely given" standard, focused on the perceived lack of prejudice to Defendants, and refused to determine whether the amendment asserting a cause of action against Nukkleus US, Nukkleus Bermuda, and CMH Bermuda was futile.

---

[3] As of the filing of this motion, the transcript of the Hearing, which Defendants ordered on an expedited basis, was not available.

## **THE STANDARD FOR LEAVE TO APPEAL**

In determining whether to hear an interlocutory appeal, district courts "generally employ the standard outlined in 28 U.S.C. § 1292(b), which applies to the certification of appeals from United States District Courts to the United States Courts of Appeals." *Reynolds v. U.S. Internal Revenue Serv.*, Civil Action No. 13-10788-NMG, 2014 WL 201610, at *2 (D. Mass. Jan. 15, 2014) (citing *In re Clark-Franklin-Kingston Press, Inc.*, Nos. 90-11231-MLW, 90-11232-MLW, 1993 WL 160580, at *2 (D. Mass. Apr. 21, 1993)). However, "[b]ecause the § 1292(b) factors are applied by analogy to [bankruptcy] circumstances, a rigid application of the standard is unwarranted. *Id.* (citing *In re Marvel Entm't Grp., Inc.*, 209 B.R. 832, 837 (D. Del. 1997)) (noting that other district courts with similar scenarios have found that a "strict application of § 1292(b) would lead to an 'absurd result' where bankruptcy decisions that are 'clearly reversible' would not be appealable").

District courts will consider three factors in determining whether to grant leave to appeal, namely, whether "(1) the Bankruptcy Court's order involved a controlling question of law, (2) there exists 'substantial ground' for a difference of opinion and (3) deciding the appeal would materially advance the termination of the litigation." *Id.* (citing *In re Envtl. Careers Org., Inc.*, No. 12-10928-GAO, 2013 WL 936501, at *1 (D. Mass. Mar. 11, 2013) and 28 U.S.C. § 1292(b)). A district court does not need to find exceptional circumstances to grant an interlocutory appeal, and must use flexible standards in exercising its discretion to permit an interlocutory appeal:

> Nevertheless, the principles governing this court's discretion do not call for 'exceptional' circumstances in the sense of 'circumstances beyond the law.' The standard of evaluation must be more flexible if the articulated goals of discretionary appellate jurisdiction over interlocutory appeals are to be achieved in each particular case and with respect to each challenged determination of the bankruptcy court.

*In re Salem Suede, Inc.*, 221 B.R. 586, 599 (D. Mass. 1998) (citation omitted). Courts regularly

grant petitions for interlocutory review when these criteria are satisfied, as they are here.

## ARGUMENT

### I.   THE ISSUES PRESENTED INVOLVE CONTROLLING QUESTIONS OF LAW.

The Bankruptcy Court's granting of BT Prime's Motion to Amend involves controlling

issues of law that can, and should, be resolved on an immediate appeal. "[A] question of law is

'controlling' if reversal of the district court's order would terminate the action." *Philip Morris*

*Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) (quoting *Klinghoffer v. S.N.C.*

*Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21,

24 (2d Cir. 1990) ("If we reverse the district court's order and dismiss the actions against the

PLO, those actions would be terminated, and thus our resolution of the issues involved in the

certified order would be 'controlling' in that sense"). Indeed, even if only one defendant will be

affected by the interlocutory appeal, the questions would still be controlling as to that one

defendant. *Id.* at 22 (granting interlocutory petition for leave to appeal for one defendant because

it would be controlling as to that defendant while also rejecting that in order to be "controlling

question of law," resolution of the issue on appeal must have precedential value for a large

number of pending cases). Indeed, "[a]n issue is 'controlling' if it is dispositive." *Reynolds*, 2014

WL 201610, at *2 (citing *Lawson v. FMR LLC*, 670 F.3d 61, 65 (1st Cir. 2012)). Granting a

motion to amend a complaint is a controlling question of law in an adversary proceeding and an

interlocutory appeal can be appropriate. *In re Lewis*, 271 B.R. 877, 887 (B.A.P. 10th Cir. 2002)

(granting leave to file interlocutory appeal based on bankruptcy court's granting of motion to

amend). Additionally, the legal issues must "refer to a 'pure' question of law that the reviewing

court could decide quickly and cleanly" without having to comb the record. *Enron Corp. v.*

8

*Springfield Assocs., L.L.C. (In re EnronCorp.)*, No. 01-16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006) ("[t]he question must also be 'controlling' in the sense that … at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.") Thus, an appellate issue is controlling if "interlocutory reversal might save time for the district court, and time and expense for the litigants" or when reversal would "speed the District Court's consideration of the merits of the parties' claims or defenses." *See* 16 Charles A. Wright et al., Federal Practice & Procedure § 3930 (2d ed. 2012); *see also Retirement Bd. of Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon*, No. 11 CIV. 5459 WHP, 2013 WL 593766, at *5 (S.D.N.Y. Feb. 14, 2013) (issue of law controlling because even though not resulting in dismissal, could significantly affect conduct of action).

As shown below, each of the questions as to which Defendants seeks leave to appeal is a controlling question of law. All issues were decided purely as a matter of law on the pleadings without the introduction of evidence or a detailed parsing of the record. Defendants respectfully submit that in deciding these issues, the Bankruptcy Court erred by (1) granting the Motion to Amend under Rule 15(a)(2) without expressly considering Rule 16(b)(4) despite the fact that the Motion to Amend was filed long after the deadline set forth in the Scheduling Order, and (2) notwithstanding its reliance on Rule 15(a)(2), failing to consider, contrary to the well-established law, whether BT Prime's successor liability claim against Nukkleus US, Nukkleus Bermuda, and CMH Bermuda is barred by the applicable statute of limitations, such that allowing BT Prime to assert it would be futile. These are questions of law appropriate for this Court's interlocutory review, and Defendants respectfully submit that this Court should grant this motion and hear Defendants' appeal.

## II. SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION EXIST BECAUSE THE BANKRUPTCY COURT'S ORDER CONTRADICTS BINDING FIRST CIRCUIT AUTHORITY.

The decision of the Bankruptcy Court is irreconcilable with the black letter law of this Circuit. A question of law presents substantial grounds for difference of opinion where courts disagree on the answer to the question to be certified for appeal and litigants are confused and disagree on the law. *See Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161, 182 (D. Mass. 2005) (finding that where there is "marked litigant confusion and disagreement" as to an issue, an interlocutory appeal is warranted); *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed."); *In re Trump*, 928 F.3d 360, 371 (4th Cir. 2019) (citing *Reese*, 643 F.3d at 688) (granting writ of mandamus directing district court to certify orders for interlocutory appeal where reasonable jurists might disagree on issue); *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (citing *Reese*, 643 F.3d at 688) (granting petition for permission to appeal). Here, the Bankruptcy Court's failure to apply the governing standard set out in Rule 16(b)(4) and refusal to consider whether the amendment would be futile are directly at odds with the governing law in this circuit. *See e.g., Berthiaume v. Enterprise Rent-A-Car*, 164 F.R.D. 121, 123 (D. Mass. 1995) ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave *without any justifying reason appearing* for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules") (emphasis added). The Bankruptcy Court's failure to apply the governing standard raises an issue of confusion and disagreement of litigants and courts within the district as to the issue of whether Rule 16(b) or Rule 15(a) applies following the expiration of a litigant's time to amend and join additional parties pursuant to a scheduling order.

**A. The Bankruptcy Court Order Is in Clear Opposition to the First Circuit Law Applying the Rule 16(b)(4) Standard in Determining Whether the Amendment Should be Permitted When Made Almost Ten Months After the Applicable Deadline Set Out in the Scheduling Order.**

Notwithstanding the liberal approach taken under Rule 15(a)(2), the Motion to Amend should have been considered under Rule 16(b)(4) because BT Prime filed it after the applicable deadline set forth in the Scheduling Order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see, e.g.*, *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) ("'[O]ur case law clearly establishes that Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely give[n]' standard, governs motions to amend filed after scheduling order deadlines' have passed.") (citations omitted); *Mansor v. JPMorgan Chase Bank, N.A.*, 270 F. Supp. 3d 445, 453 (D. Mass. 2017) (quoting *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) (internal citations omitted)) (discussing distinction between Rule 15(a)(2) and Rule 16(b)(4); "Prejudice to the opposing party remains relevant but is not the dominant criterion. '[I]ndifference' by the moving party 'seal[s] off this avenue of relief' irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause"); *EMC Corp. v. Pure Storage, Inc.*, 310 F.R.D. 194, 200 (D. Mass. 2015) (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)) (Rule 16(b)(4) good cause standard "focuses mainly 'on the diligence (or lack thereof) of the moving party[.]'").

BT Prime filed the Motion to Amend almost ten months after the May 31, 2019 deadline for doing so—which was not extended when the Court granted the parties' several requests to extend the deadlines pertaining to discovery and other matters—and without seeking or obtaining an extension of that deadline. *See* Scheduling Order at ¶¶ 1, 12; *see also* MLBR 7016-1(b) ("Any request for an extension of any deadline or for modification of a party's obligations under

11

Fed. R. Bankr. P. 7016 shall be made by written motion which shall state the basis for the relief requested."); *Trans-Spec Truck v. Caterpillar*, 524 F.3d 315, 327 (1st Cir. 2008) (affirming denial of motion to amend where plaintiff "filed its motion to amend eleven months after the deadline established by the scheduling order" because new allegations "are based on information that Trans-Spec had or should have had from the outset of the case"). BT Prime should have been diligent and should have acted earlier, since it did not learn of the New Defendants through discovery as it claimed in support of the Motion to Amend. *See supra* at n.1. The Bankruptcy Court's factual findings as to when BT Prime was or should have been aware of the New Defendants and the transaction underlying BT Prime's new cause of action are, respectfully, directly contradicted by the docket and the record.  So, too, the Bankruptcy Court's finding that Defendants will not be prejudiced by the granting of the Motion to Amend failed to consider the well-established case law discussed above, which stands for the proposition that prejudice to the non-moving party is less relevant when the moving party acts after the applicable deadline.

Because the filing of the Motion to Amend failed to comply with the Scheduling Order, and because BT Prime did not demonstrate—or even attempt in the Motion to Amend or its reply to demonstrate—that good cause existed for its lack of diligence and delay, the Motion to Amend should have been denied. Instead, and contrary to the relevant law, the Bankruptcy Court improperly relied on Rule 15(a) in finding that there was "no dilatoriness or bad faith on part of the Plaintiff" and that the amendment would not "unduly prejudice the existing defendants."  For these reasons, leave to appeal the Order Allowing Motion to Amend should be granted.

## B. The Bankruptcy Court's Refusal to Consider Whether the New Claims Are Time-Barred Contradicts First Circuit Law Requiring Courts to Only Grant Amendments That Would Not Be Futile.

It is well settled that courts in this circuit should not permit amendment of a pleading where the amendment would be futile. *Spaulding v. CitiFinancial Servicing, LLC*, Civil Action

No. 16-30173-MGM, 2018 WL 1698263, at *5 (D. Mass. Apr. 6, 2018) ("where the question of futility is raised in opposition to a motion for leave to amend a complaint, the proposed amended complaint must satisfy the Rule 12(b)(6) standard."). Futility of an amendment to a pleading means that claims alleged in the new pleading would fail to state a claim upon which relief can be granted. *The Hilsinger Co. v. Kleen Concepts, LLC*, 164 F. Supp. 3d 195, 199 (D. Mass. 2016) (citations omitted); *see also In re Hechinger Inv. Co.*, 297 B.R. 390, 393 (Bankr. D. Del. 2003) ("[L]eave to amend shall not be given where an amendment will be futile and an amendment would be futile if a plaintiff is trying to add defendants after the statute of limitations has expired."). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

"Amendment is futile where the relevant statute of limitations has elapsed." *Brooks v. Citizens Bank of Mass.*, Civil No. 19-12231-LTS, 2020 WL 837375, at *2 (D. Mass. Feb. 20, 2020) (citing *Roberts v. Islam*, 129 F. Supp. 3d 1, 3 (D. Mass. 2015)); *see also Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 88 (D. Mass. 2013) (denying motion to amend where claim was futile because it was brought after expiration of statute of limitations); *Standard Fire Ins. Co. v. Crosby Yacht Yard, Inc.*, Civil No. 04-12244-GAO, 2007 WL 465152, at *2 (D. Mass. Feb. 8, 2007) (analyzing relation back doctrine in regard to motion to amend).

The Bankruptcy Court expressly declined to consider whether the claim against Nukkleus US, Nukkleus Bermuda, and CMH Bermuda is being asserted after the expiration of the statute of limitations, noting that any "[a]rguments of futility are for the new parties to argue; the court will not adjudicate the statute of limitations prematurely." (Order Allowing Motion to Amend.) However, the Bankruptcy Court was required to decide futility and its refusal to adjudicate the

issue in conjunction with the Motion to Amend warrants an appellate review and ultimate reversal.

## III.   AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION.

The third requirement for granting leave to appeal is met if resolution of the controlling question of law substantially reduces the amount of litigation left in the case. "An interlocutory appeal materially advances the ultimate termination of the litigation where resolution of the issue on appeal 'greatly assist[s]' in resolving the underlying matter." *Watson v. Boyajian*, 309 B.R. 652, 660 (B.A.P. 1st Cir. 2004). "Questions 'found to be controlling commonly involve the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial." *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, Civil Action No. 15-13069-PBS, 2016 WL 3064054, at *4-*5 (D. Mass. May 31, 2016) (quoting 16 Charles Alan Wright et al., Federal Practice and Procedure § 3930 (3d ed. 1998)). In determining whether to grant an interlocutory appeal, courts should consider the stage of litigation and whether there is a probability that there will be a waste of resources moving forward. *Cabral v. Sullivan*, 757 F. Supp. 107 (D. Mass. 1991) (allowing interlocutory appeal of order granting new trial).

In similar circumstances, courts in other districts have recognized the utility of permitting an immediate appeal, and courts in the First Circuit have acknowledged that in the right circumstances, an immediate appeal will save both the litigants and the Court time and expense. *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 92 (D. Mass. 2010) (noting that "when a pure question of law can be resolved expeditiously" interlocutory appeal will save litigants and Court time and expense); *Retirement Bd. of Policemen's Annuity and Benefit Fund*, 2013 WL 593766, at *5 (leave to appeal appropriate where appeal would streamline resolution of litigation) (citing *Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d

14

347, 350 (S.D.N.Y. 2005) ("An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial.").

Here, hearing and ultimately granting the appeal would substantially advance this adversary proceeding toward trial. In the event that the Court reverses the Bankruptcy Court's Order Allowing Motion to Amend, the parties will only need to conduct fact witness depositions and expert discovery prior to filing any dispositive motions and then proceeding to trial. However, if the New Defendants remain in the adversary proceeding, it will be significantly delayed. Defendants and the New Defendants will be required to answer or otherwise move as to the Amended Complaint. In addition, if the litigation continues as to some or all of the New Defendants, Defendants and the New Defendants will need to identify and produce additional documents, and the scope of BT Prime's deposition questions will be expanded. Granting leave to appeal now, before excessive amounts of time and money are spent on additional discovery will minimize the likelihood of piecemeal litigation and would save the parties from expending resources unnecessarily.

## CERTIFICATION PURSUANT TO MLBR 9013-1(b)

The undersigned counsel for the Malta Defendants hereby certifies that Defendants made a reasonable and good-faith effort to determine whether or not this motion is unopposed. Specifically, on April 22, 2020, counsel for the US Defendants confirmed with counsel for BT Prime by email that BT Prime would oppose this motion.

## CONCLUSION

Defendants respectfully submit that the Court should grant Defendants leave to appeal the Order Allowing Motion to Amend. Respectfully, the Bankruptcy Court erred in declining to

apply the "good cause" standard under Rule 16(b)(4) notwithstanding the filing of the Motion to Amend almost ten months after the applicable deadline, and instead relying on the Rule 15(a)(2) "freely granted" standard and its perceived lack of prejudice to Defendants. In addition, the Bankruptcy Court erred in declining to consider whether adding the proposed cause of action against Nukkleus US, Nukkleus Bermuda, and CMH Bermuda would be futile—due to the assertion of that cause of action after the expiration of the applicable statute of limitations—and instead stating in the Order Allowing Motion to Amend that "[a]rguments of futility are for the new parties to argue; the court will not adjudicate the statute of limitations issue prematurely." Lastly, permitting Defendants to proceed with an interlocutory appeal at this time will minimize piecemeal litigation and save time and resources.

For all of the foregoing reasons, Defendants respectfully submit that the Court should grant Defendants' request for leave to appeal the Order Allowing Motion to Amend.

Date: April 23, 2020                                      Respectfully submitted,

/s/ Steven C. Reingold                                   /s/ Stefan Savic*

_____                _____

Steven C. Reingold (BBO No. 638649)         Stefan Savic (BBO No. 688338)
Gregory M. Boucher (BBO No. 665212)         Brian L. Grossman*
**SAUL EWING ARNSTEIN & LEHR LLP**          **SHIPKEVICH PLLC**
131 Dartmouth Street                        165 Broadway, STE 2300
Boston, Massachusetts 02116                 New York, New York 10006
Telephone:     (617) 723-3300               Telephone:     (212) 252-3003
Facsimile:     (617) 723-4151               Facsimile:     (888) 568-5815
steven.reingold@saul.com                    ssavic@shipkevich.com
gregory.boucher@saul.com                    bgrossman@shipkevich.com
                                            *Admitted Pro Hac Vice
*Attorneys for Defendants Forexware LLC and*
*FXDirectDealer, LLC*                        *Attorneys for Defendants Currency Mountain*
                                            *Holdings and FXDD Malta*

_____

\* Pursuant to Rule 8(b) of the Electronic Filing Rules of the Local Bankruptcy Rules of the United States
Bankruptcy Court for the District of Massachusetts, the filing attorney hereby represents that he has received the
necessary authority to affix the electronic signatures of all other signatories hereto.

## FEDERAL RULE OF BANKRUPTCY 8013(f)(3)(A) CERTIFICATION

I, Stefan Savic, hereby certify pursuant to Federal Rule of Bankruptcy 8013(f)(3)(A) that this brief was drafted on a word-processing system and is 5,147 words in length according to the word-processing system, exclusive of the caption page, table of contents, table of authorities, signature blocks, and certifications.

/s/ Stefan Savic

_____

Stefan Savic (BBO No. 688338)
**SHIPKEVICH PLLC**
165 Broadway, STE 2300
New York, New York 10006
Telephone:    (212) 252-3003
Facsimile:     (888) 568-5815
ssavic@shipkevich.com

*Attorneys for Defendants Currency Mountain Holdings and FXDD Malta*

## CERTIFICATE OF SERVICE

I, Stefan Savic, hereby certify that on the 23rd day of April, 2020, I caused copies of the within document to be served through the Court's CM/ECF system upon the following registered electronic filers appearing in this adversary proceeding:

Harold B. Murphy, Esq.
Charles R. Bennett, Jr., Esq.
Shawn Lu, Esq.
Murphy & King, P.C.
One Beacon Street
Boston, Massachusetts 02108

Attorneys for BT Prime Ltd.

/s/ Stefan Savic
_____
Stefan Savic (BBO No. 688338)
**SHIPKEVICH PLLC**
165 Broadway, STE 2300
New York, New York 10006
Telephone:     (212) 252-3003
Facsimile:     (888) 568-5815
ssavic@shipkevich.com

*Attorneys for Defendants Currency Mountain Holdings and FXDD Malta*