**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

In re:

BT PRIME LTD.,

       Debtor.

_____

BT PRIME LTD.

       Plaintiff,

v.

BOSTON TECHNOLOGIES POWERED BY
FOREXWARE LLC f/k/a FOREXWARE LLC,
CURRENCY MOUNTAIN HOLDINGS LIMITED
f/k/a FOREXWARE MALTA HOLDINGS LTD.,
FXDIRECTDEALER, LLC, FXDD MALTA LTD.,
CURRENCY MOUNTAIN HOLDINGS LLC,
NUKKLEUS, INC., NUKKLEUS BERMUDA
LIMITED, and CURRENCY MOUNTAIN
HOLDINGS BERMUDA, LTD.

       Defendants.

_____/

**Chapter 11**

**Case No. 15-10745-FJB**

**Adversary Proceeding**
**No. 16-1178**

<u>**MOTION OF DEFENDANTS CURRENCY MOUNTAIN HOLDINGS LLC,**</u>
<u>**NUKKLEUS, INC., NUKKLEUS BERMUDA LIMITED, AND CURRENCY MOUNTAIN**</u>
<u>**HOLDINGS BERMUDA, LTD TO DISMISS COUNTS XV AND XVI OF THE**</u>
<u>**AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**</u>

Stefan Savic (BBO No. 688338)
Brian L. Grossman*
**SHIPKEVICH PLLC**
165 Broadway, STE 2300
New York, New York 10006
Telephone:    (212) 252-3003
Facsimile:    (888) 568-5815
ssavic@shipkevich.com
*Admitted Pro Hac Vice

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

STANDARD ............................................................................................................... 6

ARGUMENT .............................................................................................................. 7

    I.    THE COURT SHOULD DISMISS THE NEWLY ADDED COUNT XVI FOR
    FAILURE TO STATE A CLAIM AS IT IS BARRED BY THE STATUTE OF
    LIMITATIONS AND IT FAILS TO PLEAD SUFFICIENT FACTS TO SATISFY
    THE NECESSARY ELEMENTS OF THE CLAIM. .......................................... 7

        A. The Court Should Dismiss BT Prime's Sixteenth Cause of Action for Successor
        Liability Because It is Barred by the Applicable Statute of Limitations. ...................... 7

            1.    BT Prime's Count XVI Is Barred by the Three-Year Statute of Limitations.......... 7

            2.    Count XVI Does Not Relate Back to the Filing of the Original Complaint. ......... 11

        B. BT Prime Fails to Plead the Necessary Elements of a Successor Liability Claim. ....... 13

        C. BT Prime Fails to Plead That There Is a Live and Actual Controversy Requiring a
        Declaratory Judgment in Count XVI. ............................................................... 16

    II.    BT PRIME FAILS TO PLEAD SUFFICIENT FACTS TO SATISFY THE
    NECESSARY ELEMENTS OF ITS COUNT XV AGAINST CMH US........................ 17

        A. Plaintiff Fails to Allege Sufficient Facts, or State Any Non-Conclusory Allegations,
        That Would Support Piercing of Malta Defendants' Corporate Veil. .......................... 17

        B. The Court Should Dismiss Count XV Because BT Prime Fails to Plead that there is a
        Live and Actual Controversy. ......................................................................... 19

CONCLUSION .......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ............................................................................................ 6, 7

*Attorney General v. M.C.K., Inc.*,
   432 Mass. 546 (Mass. 2000) ...................................................................................... 19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 6

*Birbara v. Locke*,
   99 F.3d 1233 (1st Cir. 1996) ...................................................................................... 19

*Bushkin Assocs., Inc. v. Raytheon Co.*,
   393 Mass. 622 (1985).................................................................................................. 10

*Chandler v. Ciccoricco*,
   2003 WL 21040185 (Del. Ch. May 5, 2003) ............................................................. 9

*CSX Transportation, Inc. v. Tri Cty. Recycling*,
   No. 18-CV-12095-DJC, 2019 WL 3225754 (D. Mass. July 17, 2019) .................... 11

*Dyer v. Creative Packaging, Inc.*,
   No. 991236B, 2003 WL 21500661 (Mass. Super. May 8, 2003) ........................... 16

*EMC Corp. v. Chevedden*,
   4 F. Supp. 3d 330 (D. Mass. 2014) .................................................................... 17, 21

*Farm Family Cas. Co. v. Cumberland Ins. Co.*,
   No. K11C-07-006 JTV, 2013 WL 5488656 (Del. Super. Ct. Oct. 2, 2013) ........................ 8, 10

*Genentech, Inc. v. Arendal Mgmt., Inc.*,
   92 Mass. App. Ct. 1108 (Mass. App. Ct. 2017) ....................................................... 16

*Gilbert v. City of Cambridge*,
   932 F.2d 51 (1st Cir. 1991), *cert. denied*, 502 U.S. 866 (1991)................................... 7

*Goldsmith v. Marsh U.S., Inc. (In re Glasshouse Techns., Inc.)*,
   604 B.R. 600 (Bankr. D. Mass. 2019)........................................................................ 10

*Goldsmith v. Marsh USA, Inc. (In re GlassHouse Tech., Inc.)*,
   604 B.R. 600 (Bankr. D. Mass. 2019)........................................................................... 8

*Grella v. Zimmerman (In re Art & Co., Inc.*,
    179 B.R. 757 (Bankr. D. Mass. 1995)............................................................ 12

*Guzman v. MRM/Elgin*,
    409 Mass. 563 (1991)............................................................................ 14, 15

*Harrison v. NetCentric Corp.*,
    433 Mass. 465 (2001)................................................................................. 10

*Hoffman v. Optima Systems, Inc.*,
    683 F. Supp. 865 (D. Mass. 1988) .............................................................. 9

*Iconics, Inc. v. Massaro*,
    No. 11-11526-DPW, 2016 WL 199407 (D. Mass. Jan. 15, 2016)............................. 12

*In re Asbestos Litigation*,
    517 A.2d 697 (Del. Super. Ct. 1986) .......................................................... 16

*In re Sapient Corporation Derivative Litigation*,
    555 F. Supp. 2d 259 (D. Mass. 2008) ........................................................ 10

*In re USA Cafes, L.P. Litig.*,
    600 A.2d 43 (Del. Ch. 1991)....................................................................... 9

*Labrador v. Indus. Contractors' Supplies, Inc.*,
    No. CV 13-13029-MLW, 2015 WL 5737141 (D. Mass. Sept. 30, 2015)................. 13

*Locomotive Engineers v. Springfield Terminal*,
    210 F.3d 18 (1st Cir. 2000) ....................................................................... 20

*Magnolia's v. Artesian*,
    C.A. No. S11C-04-013-ESB (Del. Super. Ct. Sep. 19, 2011)............................ 15

*Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Dep't*,
    973 F.2d 18 (1st Cir. 1992) ................................................................. 20, 21

*McCarthy v. Litton Indus., Inc.*,
    410 Mass. 15 (1991)............................................................................ 14, 15

*Medimmune, Inc. v. GenenTech, Inc.*,
    549 U.S. 118 (2007) ............................................................................ 17, 21

*Milliken & Co. v. Duro Textiles, LLC*,
    451 Mass. 547 (Mass. 2008) ............................................................ 15, 16, 17

*Mullen v. Alarmguard of Delmarva, Inc.*,
    625 A.2d 258 (Del. 1993)........................................................................... 12

*My Bread Baking Co. v. Cumberland Farms, Inc.*,
    353 Mass. 614 (Mass. 1968) ..................................................................... 18, 19

*Nahass v. Harrison*,
    207 F. Supp. 3d 96 (D. Mass. 2016) ............................................................ 9

*New Bedford Capacitor, Inc. v. Sexton Can Co., Inc. (In re New Bedford Capacitor, Inc.)*,
    301 B.R. 375 (Bankr. D. Mass. 2003) ........................................................ 12

*Nollet v. Justices of the Trial Court of Mass.*,
    83 F.Supp.2d 204 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000) ................. 6

*O'Loughlin v. Nat'l R.R. Passenger Corp.*,
    928 F.2d 24 (1st Cir. 1991) ........................................................................ 12

*Omni-Wave Electronics Corp. v. Marshall Industries*,
    127 F.R.D. 644 (D. Mass. 1989) ............................................................ 19, 20

*Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*,
    754 F.2d 10 (1st Cir. 1985) ........................................................................ 19

*Platten v. HG Berm. Exempted Ltd.*,
    437 F.3d 118 (1st Cir. 2006) ...................................................................... 18

*Rohn Industries, Inc. v. Platinum Equity LLC*,
    887 A.2d 983 (Del. Super. Ct. 2005) ...................................................... 14, 15

*Sanchez v. Pereira–Castillo*,
    590 F.3d 31 (1st Cir. 2009) .......................................................................... 7

*Scott v. NG US 1, Inc.*,
    450 Mass. 760 (Mass. 2008) .................................................................. 18, 20

*Taylor v. Champion*,
    693 A.2d 1072 (Del. 1997)........................................................................ 13

*Techtarget, Inc. v. Spark Design, LLC*,
    746 F. Supp. 2d 353 (D. Mass. 2010) ........................................................ 19

*Whittaker v. Whittaker (In re Whittaker)*,
    564 B.R. 115 (Bankr. D. Mass. 2017)........................................................ 10

*Xpress Mgt. v. Hot Wings International*,
    C.A. No. 2856-VCL (Del. Ch. May 30, 2007)............................................... 9

**Statutes**

11 U.S.C. § 501 ............................................................................................................... 5

11 U.S.C. § 502 ............................................................................................................... 5

Del. Code. Ann. tit. 10, § 8106 ............................................................................... 8, 10

Mass. Gen. L. c. 260, § 20 .......................................................................................... 11

Mass. Gen. L. c. 260, § 2A ..................................................................................... 8, 10

**Rules**

Delaware Superior Court Civil Rule 15 ............................................................... 12, 13

Fed. R. Civ. P. 12 ............................................................................................................ 1

Fed. R. Civ. P. 15 ..................................................................................................... 8, 12

Mass. R. Civ. P. 15 ........................................................................................................ 13

**Treatises**

Restatement (Second) of Conflict of Laws § 6 ......................................................... 8, 9

Defendants Currency Mountain Holdings LLC ("CMH US"), Nukkleus, Inc. ("Nukkleus US"), Nukkleus Bermuda Limited ("Nukkleus Bermuda"), and Currency Mountain Holdings Bermuda, Ltd ("CMH Bermuda") (collectively, the "New Defendants") herein move to dismiss Counts XV and XVI of the Amended Complaint (Dkt. No. 164 (the "Amended Complaint") filed by the Debtor BT Prime Ltd. ("BT Prime") pursuant to Federal Rule of Civil Procedure (the "Rules") 12(b)(6).

## PRELIMINARY STATEMENT

1.       The Court should dismiss BT Prime's two newly added causes of action, Counts XV and XVI, against the New Defendants because they are untimely and insufficiently supported by factual allegations. BT Prime's Count XVI brought against Nukkleus US, Nukkleus Bermuda, and CMH Bermuda is barred by the three-year statute of limitations that expired nearly a year before BT Prime moved to amend its complaint. Moreover, BT Prime fails to adequately plead facts in support of the elements of both of its newly added claims—failing both to show that there is a live and actual controversy needed for a declaratory judgment relief and to sufficiently plead facts to support the elements of an alter ego and successor interest claims.

2.       Count XVI seeks a declaratory judgment that Nukkleus US, Nukkleus Bermuda, and CMH Bermuda are successors in interest of Forexware, LLC ("Forexware US") based on the "mere continuation" theory and premised on a certain asset sale that occurred on or around March 24, 2016. Any successor liability cause of action, thus, had to be filed before March 24, 2019. The motion for leave to amend the complaint was not filed until almost a year later, in March 2020. BT Prime cannot find refuge for its delay and lack of diligence in the relation-back doctrine as the successor liability claim is based on entirely different set of facts and circumstance than those alleged in the original complaint, filed in October 2016.

1

3.       BT Prime also fails to plead the necessary elements of its Count XVI. There is no real and actual controversy that would permit BT Prime to seek a declaratory judgment. Moreover, BT Prime fails to plead that Forexware US no longer exists and that all three newly-named entities are its mere continuation as required to upset the well-established presumption that when one company purchases the assets of another, the purchaser does not thereby acquire the debts and liabilities of the seller. Indeed, BT Prime knows very well that Forexware US continues to operate as an entity as it has been litigating this case against it for almost four years.

4.       Count XV which seeks a declaration that, *inter alia*, to the extent that any of Forexware US, Currency Mountain Holdings Limited ("CMH Malta"), FXDirectDealer, LLC ("FXDD US"), or FXDD Malta Ltd. ("FXDD Malta", together with CMH Malta the "Malta Defendants", and collectively the "Original Defendants") are liable to the Debtor, CMH US should be jointly and severally liable to the Debtor for the extent of any such liability. Here, too, BT Prime fails to plead sufficient or any non-conclusory allegations supporting its veil piercing claim pleaded under the guise of a declaratory judgment.

5.       Count XV is also fatally deficient as it lacks a live and actual controversy, an essential element of a declaratory judgment claim. The question of whether CMH US should be jointly and severally liable "[t]o the extent that any of the Forexware Defendants are liable" is based on an uncertain and contingent event. The law is clear that this type of contingency cannot form the basis for a declaratory judgment and, thus, cannot survive a motion to dismiss.

2

## **STATEMENT OF FACTS**[1]

*Procedural History*

6.      On March 2, 2015, BT Prime filed a Voluntary Petition for relief under chapter 11

of title 11 of the United States Code with this Court, commencing Case No. 15-10745 (FJB). On

May 10, 2016, the Joint Liquidating Plan of Reorganization of BT Prime Ltd and the Official

Committee of Unsecured Creditors was confirmed. (Dkt. Nos. 98 and 130.) Thereafter, on October

19, 2016, BT Prime initiated this adversary proceeding. (Dkt. No. 1 (the "Original Complaint").)

The Original Complaint named only the Original Defendants.

*Amended Complaint*

7.      On March 16, 2020, BT Prime filed its motion for leave to amend the Original

Complaint to, *inter alia*, name four new defendants and add two declaratory judgment claims.[2]

The newly asserted Count XV seeks to hold CMH US, Forexware US, FXDD US, FXDD Malta,

and CMH Malta jointly and severally liable to BT Prime for any *potential* liability that the Court

*may* find upon adjudication of this matter. BT Prime also added Count XVI seeking that the Court

declare that Nukkleus US, Nukkleus Bermuda, and CMH Bermuda are successors in interest to

Forexware US. (Dkt. No. 150.) On April 15, 2020, the Court permitted BT Prime to file its

Amended Complaint (Dkt. No. 162), which BT Prime filed on April 16, 2020. (Dkt. No. 164.)

*Count XV of the Amended Complaint*

8.      Count XV "requests a declaration that to the extent that any of the Forexware

Defendants are liable to the Debtor, all of the Forexware Defendants are jointly and severally liable

---

[1] For the purposes of the present motion, the facts are stated as alleged in the Amended Complaint.

[2] BT Prime also sought to add an additional claim for equitable accounting under Massachusetts law, but the Court denied the request as it "could have been, but was not, made within the time permitted by the Court's Pretrial Order." (Dkt. No. 162.) A similar claim was brough in the Original Complaint but was dismissed by the Court. (Dkt. No. 107.)

to the Debtor for the extent of any such liability." (Amended Complaint ¶ 187.)

9.      BT Prime presented this newly added cause of action as a mere "clarification" of its Count IX from the Original Complaint. But the two are vastly different. Count IX of the Original Complaint sought a declaratory judgment against the Original Defendants that "to the extent the Debtor is liable *to Boston Prime* as a consequence of the $2.5 Million and $3 Million Transfers, the [Original] Defendants are liable to the Debtor for any such liability." (Original Complaint, ¶ 133 (emphasis added).) The Court previously upheld Count IX of the Original Complaint finding that "[t]he complaint alleges (albeit in the alternative) that the Debtor has incurred such liability[.]" (Memorandum of Decision on Motions to Dismiss, dated March 29, 2020, Dkt. No. 107, 43–44).

10.     In finding that the claim did not lack an actual controversy, the Court noted that "[t]he claims register in this case shows that Boston Prime (In Special Administration) has filed a proof of claim in this case for $7.2 million for liability arising from payment of monies from Boston Prime to BT Prime and that no objection has been filed to that proof of claim. When a proof of a claim is filed under 11 U.S.C. § 501, the claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a)." (*Id.* at 44 n.9.)

11.     In contrast, Count XV "requests a declaration that to the extent that any of the Forexware Defendants are liable to the Debtor, all of the Forexware Defendants are jointly and severally liable to the Debtor for the extent of any such liability." (Amended Complaint, ¶ 187.) This is a starkly different relief from that sought in the original Count IX, as Count XV now seeks that the Court pierce the corporate veil and hold a number of separate corporate entities as each other's alter egos, without any mention of Boston Prime or BT Prime's other creditors.

*Count XVI of the Amended Complaint*

12.     Count XVI alleges that an asset purchase that occurred on May 24, 2016, resulted

4

in Nukkleus US, Nukkleus Bermuda, and CMH Bermuda all becoming the successors in interest to Forexware US. (Amended Complaint ¶¶ 188–204.) On this basis, Count XVI "requests a declaration that to the extent that any of the Forexware Defendants are liable to the Debtor, all of Nukkleus US, Nukkleus Bermuda, and CMH Bermuda are jointly and severally liable to the Debtor for the extent of any such liability." (Amended Complaint ¶ 204.)

13.     The Asset Purchase Agreement was entered into on March 24, 2016, by and between CMH Bermuda, on the one hand, and Nukkleus US, Nukkleus Bermuda, and Charms Investments Ltd., on the other hand. (Exhibit C to Amended Complaint, Dkt. No. 164–8 (the "Asset Purchase Agreement").) BT Prime alleges that Asset Purchase Agreement evidences a transaction whereby "substantially all of Forexware [US]'s assets" were conveyed, including "servers, patents, software programs, technology, and the Forexware brand." (Amended Complaint ¶ 191.) BT Prime does not allege in Count XVI what the totality of Forexware US's assets consisted of immediately prior to the Asset Purchase Agreement.

14.     Nor does BT Prime allege how the relationship between Forexware US and Nukkleus US, Nukkleus Bermuda, and CMH Bermuda manifests into successor liability. (Amended Complaint ¶¶ 188–204.) BT Prime only states the allegations supporting the purported successor liability claim within Count XVI itself and does not plead how all three of Nukkleus US, Nukkleus Bermuda, and CMH Bermuda are the successors in interest to Forexware US. Instead, BT Prime groups all three entities, including Forexware US's alleged parent company, CMH Bermuda, despite CMH Bermuda not being alleged to have received any of Forexware US's assets. (Amended Complaint ¶ 191 ("CMH Bermuda conveyed to Nukkleus Bermuda certain assets").)

## STANDARD

15.     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000).

16.     While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Sanchez v. Pereira–Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. *Iqbal*, 129 S.Ct. at 1950.

17.     Here, BT Prime fails to allege that there is a live and actual controversy necessary for the sought declaratory judgment relief in Counts XV and XVI while also failing to plead the required elements of the alter ego and successor in interest claims, which form the basis of those counts respectively.

6

## ARGUMENT

I. **THE COURT SHOULD DISMISS THE NEWLY ADDED COUNT XVI FOR FAILURE TO STATE A CLAIM AS IT IS BARRED BY THE STATUTE OF LIMITATIONS AND IT FAILS TO PLEAD SUFFICIENT FACTS TO SATISFY THE NECESSARY ELEMENTS OF THE CLAIM.**

   A. **The Court Should Dismiss BT Prime's Sixteenth Cause of Action for Successor Liability Because It is Barred by the Statute of Limitations**.

18.     The Court should dismiss BT Prime's Count XVI[3] because the three-year statute of limitations[4] for successor liability based on a May 24, 2016 Asset Purchase Agreement expired on May 24, 2019, nearly a year before BT Prime moved to amend its Original Complaint. The Amended Complaint does not relate back to the Original Complaint because this new claim against entirely new defendants did not arise "out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B). To the contrary, the allegations and defendants in Count XVI have no relationship whatsoever to BT Prime or any of the conduct pleaded in the Original Complaint.

   1. **BT Prime's Count XVI Is Subject to a Three-Year Statute of Limitations.**

19.     BT Prime's sixteenth cause of action, framed as a declaratory judgment seeking that the Court hold the New Defendants liable for any potential judgment against Forexware US as its successors in interest, is barred by the three-year statute of limitations. *See* Del. Code. Ann. tit. 10, § 8106; *Farm Family Cas. Co. v. Cumberland Ins. Co.*, No. K11C-07-006 JTV, 2013 WL 5488656, at *4 (Del. Super. Ct. Oct. 2, 2013) (Under Delaware law, the statute of limitations for a

---

[3] While Count XVI is alleged only against Forexware US, BT Prime appears to, at times, seek a determination that Nukkleus US, Nukkleus Bermuda, and CMH Bermuda are successors in interest of all Forexware Defendants.

[4] Despite Count XVI being pleaded as a declaratory judgment cause of action, it is actually a legal claim for successor liability, such that the statute of limitations for successor liability, and not for an equitable cause of action, applies. *See Gilbert v. City of Cambridge*, 932 F.2d 51, 57-58 (1st Cir. 1991), *cert. denied*, 502 U.S. 866 (1991) (citations omitted) ("if 'a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern.'").

successor liability claim is three years); *see also* Mass. Gen. L. c. 260, § 2A.

20.    Delaware's three-year statute of limitations period applies to Count XVI.

Massachusetts courts analyze the issue of governing law by considering the factors set forth in

sections 6 and 145 of the Restatement (Second) of Conflict of Laws.  *Goldsmith v. Marsh USA,*

*Inc. (In re GlassHouse Tech., Inc.)*, 604 B.R. 600, 614 (Bankr. D. Mass. 2019) (citation omitted).

Section 6(2) provides that in the absence of a statutory directive,

> the factors relevant to the choice of the applicable rule of law include (a) the needs
> of the interstate and international systems, (b) the relevant policies of the forum, (c)
> the relevant policies of other interested states and the relative interests of those
> states in the determination of the particular issue, (d) the protection of justified
> expectations, (e) the basic policies underlying the particular field of law, (f)
> certainty, predictability and uniformity of result, and (g) ease in the determination
> and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6.  These factors are neither exclusive nor listed in

order of importance.  *See id*. at cmt. c. Moreover, § 145 provides that:

> (1) The rights and liabilities of the parties with respect to an issue in tort are
> determined by the local law of the state which, with respect to that issue, has the
> most significant relationship to the occurrence and the parties under the principles
> stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine
> the law applicable to an issue include: (a) the place where the injury occurred, (b)
> the place where the conduct causing the injury occurred, (c) the domicil, residence,
> nationality, place of incorporation and place of business of the parties, and (d) the
> place where the relationship, if any, between the parties is centered.  These contacts
> are to be evaluated according to their relative importance with respect to the
> particular issue.

*Id*. at § 145.

21.    Delaware has a strong interest in seeing that companies and corporations formed

under its laws have disputes resolved in a predictable manner. *Xpress Mgt. v. Hot Wings*

*International*, C.A. No. 2856-VCL, at *12 (Del. Ch. May 30, 2007) ("It is an indisputable

proposition that this State has a strong, and often paramount, interest in seeing such disputes

resolved in a rapid, orderly, and predictable manner."); *Chandler v. Ciccoricco*, 2003 WL 21040185, at \*12 (Del. Ch. May 5, 2003) ("Delaware has a strong interest in resolving disputes involving the ownership of shares in, and the governance of, corporations formed under its laws."); *In re USA Cafes, L.P. Litig.*, 600 A.2d 43, 51 (Del. Ch. 1991) ("[Delaware] . . . has a strong interest in the effective administration of the law governing corporations and limited partnerships organized under its laws.").

22.     "Massachusetts law requires that a court look to the law of the state of incorporation to determine the corporation's liability . . . ." *Hoffman v. Optima Systems, Inc.*, 683 F. Supp. 865, 872 (D. Mass. 1988). "[P]ursuant to the Massachusetts 'internal affairs' doctrine, the law of the state of incorporation applies to disputes over the internal workings of a corporation." *Nahass v. Harrison*, 207 F. Supp. 3d 96, 102 (D. Mass. 2016) (citing *Harrison v. NetCentric Corp.*, 433 Mass. 465, 470–72 (2001)); *In re Sapient Corporation Derivative Litigation*, 555 F. Supp. 2d 259, 262 (D. Mass. 2008) ("Here, Delaware law applies because Sapient is a Delaware corporation.").

23.     Pursuant to the Massachusetts choice of law rules, the law of Delaware applies to Count XVI. *Goldsmith v. Marsh U.S., Inc. (In re Glasshouse Techns., Inc.)*, 604 B.R. 600, 614 (Bankr. D. Mass. 2019); *Whittaker v. Whittaker (In re Whittaker)*, 564 B.R. 115, 142 (Bankr. D. Mass. 2017); *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631 (1985) (Massachusetts follows "a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole."). Count XVI alleges that substantially all of Forexware US's assets were conveyed in exchange for shares of Nukkleus US (Amended Complaint ¶¶ 191–92) both of which are incorporated in Delaware. (Amended Complaint ¶¶ 3, 8.)

24.     As the statute of limitations for a successor liability claim—BT Prime's Count

XVI—is three years under Delaware law, *see, e.g.*, *Farm Family Cas.*, 2013 WL 5488656, at *4;

Del. Code. Ann. tit. 10, § 8106, Count XVI must have been asserted within three years from the

transactions that form the basis of that count, meaning no later than May 24, 2019. (Amended

Complaint ¶ 191.) BT Prime moved to amend its complaint on March 16, 2020. (Dkt. No. 150.)

25.     Even if, *arguendo*, Massachusetts law governed the statute of limitations of Count

XVI, the claim is similarly time-barred pursuant to the three-year statute of limitations. Mass. Gen.

L. c. 260, § 2A.

26.     In attempting to argue that the statute of limitations for a successor liability claim

in Massachusetts is twenty years, BT Prime previously improperly relied on Mass. Gen. L. c. 260,

§ 20 claiming that Count XVI seeks to "enforce a judgment that enters against Forexware [US]

against the Nukkleus Defendants." (Reply to Motion to Amend, 4 (citing *CSX Transportation, Inc.

v. Tri Cty. Recycling*, No. 18-CV-12095-DJC, 2019 WL 3225754 (D. Mass. July 17, 2019)).)

However, there are three major distinctions that make *CSX Transp.* inapplicable here. First, *CSX

Transp.*, dealt with collection of a judgment that had already been entered over five years earlier.

*CSX Transp.*, 2019 WL 3225754, at *2–*3 ("On August 1, 2013, a court in this district entered

judgment for CSX" and "CSX instituted this action on October 5, 2018").

27.     Second, in *CSX Transp.*, the judgment debtor was alleged to have transferred its

assets to its alleged successor in interest *after* the entry of the judgment against the judgment

debtor. *Id.* at *2 ("On August 1, 2013, a court in this district entered judgment for CSX" and "[o]n

or about May 6, 2014, McLaughlin formed Tri County and transferred ABC&D's assets to Tri

County, including equipment and vehicles"). Here, the Asset Purchase Agreement was entered

into approximately five months *before* this adversary proceeding was even commenced. (Amended

Complaint ¶ 191.)

28.     Third, in *CSX Transp.*, the alleged successor in interest assumed the judgment

debtor's debts in the asset purchase. *Id.* at *2 ("On or about May 6, 2014, McLaughlin formed Tri

County and transferred ABC&D's assets to Tri County, including equipment and vehicles. Tri

County also assumed ABC&D's debts"). Here, Forexware US's debts were not assumed—either

explicitly or implicitly—in the asset purchase.

29.     The Asset Purchase Agreement is dated March 24, 2016, and the three-year statute

of limitations under both Delaware and Massachusetts law expired on March 24, 2019. Therefore,

BT Prime's filing of the Motion to Amended Complaint on March 16, 2020, occurred well-after

the statute of limitations expired.

### 2.   Count XVI Does Not Relate Back to the Filing of the Original Complaint.

30.     Count XVI does not relate back to the original pleading that was filed on October

19, 2016. Rule 15(c)(1)(B) provides that an amendment to a pleading relates back to the date on

which the original pleading was filed when "the amendment asserts a claim or defense that arose

out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original

pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).

31.     "The First Circuit generally allows relation back for 'technical errors' but will not

allow relation back for claims 'not even suggested in the original complaint.'" *Iconics, Inc. v.

Massaro*, No. 11-11526-DPW, 2016 WL 199407, at *5 (D. Mass. Jan. 15, 2016) (quoting

*O'Loughlin v. Nat'l R.R. Passenger Corp.*, 928 F.2d 24, 26-27 (1st Cir. 1991) (citation omitted));

*see also New Bedford Capacitor, Inc. v. Sexton Can Co., Inc. (In re New Bedford Capacitor, Inc.)*,

301 B.R. 375, 378-379 (Bankr. D. Mass. 2003) (quoting *Grella v. Zimmerman (In re Art & Co.,

Inc.*, 179 B.R. 757, 763 (Bankr. D. Mass. 1995)).

32.     Delaware's relation back statute is "virtually identical" to Federal Rule of Civil

Procedure 15. *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 262 (Del. 1993) ("Superior

11

Court Rule 15 is virtually identical to its counterpart in the Federal Rules of Civil Procedure.").

Under Delaware Superior Court Civil Rule 15(c), three conditions must be satisfied for an

amendment to relate back:

> First, the claim asserted by the amendment must arise out of the same conduct,
> transaction or occurrence asserted in the original pleading. Second, within the time
> provided by the rules, the party to be added must have received notice of the
> institution of the action, so that the party will not be prejudiced. Third, within the
> time provided by the rules, the party to be added must have known or should have
> known that, but for a mistake concerning the identity of the proper party, the action
> would have been brought against the party to be added by the amendment.

*Taylor v. Champion*, 693 A.2d 1072, 1074 (Del. 1997) (citing Super. Ct. Civ. R. 15(c)). This Rule

"includes no discretionary powers for the Superior Court to exercise." *Id*.

33.     Even if the Court were to apply Massachusetts relation back law, which permits a

plaintiff to add a defendant that the plaintiff intended to include in the original action, there is

nothing in the Amended Complaint suggesting that BT Prime originally intended to bring Count

XVI or to include any of the New Defendants in the Original Complaint. *See Labrador v. Indus.*

*Contractors' Supplies, Inc.*, No. CV 13-13029-MLW, 2015 WL 5737141, at *4 (D. Mass. Sept.

30, 2015). Massachusetts law's "requirement for adding a defendant under the relation back

doctrine is that the claims asserted against the new defendant 'arose out of the conduct, transaction,

or occurrence set forth or attempted to be set forth in the original pleading.'" *Labrador*, 2015 WL

5737141, at *6 (quoting Mass. R. Civ. P. 15(c)).

34.     Here, Count XVI asserts an entirely new cause of action against three entities that

were never mentioned in the Original Complaint, that had no dealings or interactions with BT

Prime or its creditors whatsoever, and that are alleged to have engaged in a series of transactions

with Forexware US that are not the subject of any of the causes of action set forth in the Original

Complaint. Since the proposed Count XVI relies on new and different facts and transactions than

those at issue in the Original Complaint—all of which were a matter of public record as evidenced

by the fact that BT Prime retrieved the information from the SEC's public EDGAR system[5]—it

does not relate back to the date on which BT Prime initiated this adversary proceeding.

**B.  BT Prime Fails to Plead the Necessary Elements of a Successor Liability Claim.**

35.     The Court should dismiss Count XVI as BT Prime fails to plead all of the elements

of its successor liability claim. "It is a settled rule of corporate law that, when one company

purchases the assets of another, the purchaser does not thereby acquire the debts and liabilities of

the seller." *McCarthy v. Litton Industries, Inc.*, 410 Mass. 15, 21 (1991) (citing *Guzman v.*

*MRM/Elgin*, 409 Mass. 563 (1991)); *Rohn Industries, Inc. v. Platinum Equity LLC*, 887 A.2d 983,

996 (Del. Super. Ct. 2005) *aff'd in part*, *rev'd in part on other grounds*, 911 A.2d 379 (Del. 2006),

(internal quotation marks omitted) ("It is a well-settled rule of corporate law that where one

company sells or transfers all of its assets to another, the second entity does not become liable for

the debts and liabilities, including torts, of the transferor."). "The rule is subject to four exceptions:

liability may be imposed on the purchasing corporation (1) where the purchaser impliedly or

explicitly agrees to assume the liability of the seller, (2) where the transaction is entered into

fraudulently to avoid liability, (3) where the transaction amounts to a de facto merger, or (4) where

---

[5] BT Prime alleged in its Motion for Leave to Amend the Complaint that it "learned through discovery that after the commencement of the Debtor's bankruptcy case, Emil Assentato orchestrated a series of transactions between the Forexware Defendants" and the three new entities. (Motion for Leave to Amend Complaint, dated March 16, 2020, Dkt. No. 150, 3–4.) But BT Prime could not have learned this information through discovery because the Original Defendants and BT Prime agreed that the scope of discovery was only from April 2014 until the date of the bankruptcy petition on March 2, 2015, the Original Defendants only produced documents up until the date of the bankruptcy petition, no depositions have occurred yet, and no documents regarding the Asset Purchase Agreement were produced in discovery. The transaction that BT Prime alleges that it learned of in discovery—the transaction BT Prime relies on in alleging its successor liability cause of action—occurred in March 2016, one year after the agreed upon end of the scope of discovery. (Asset Purchase Agreement.) Furthermore, the Asset Purchase Agreement that BT Prime has attached in support of its successor liability claim does not have a Bates Stamp on it—because it was not produced in this action—and instead has an access date of January 29, 2020, in the top left corner of the document. (Asset Purchase Agreement.)

the purchasing corporation is 'merely a continuation' of the selling corporation." *McCarthy.*, 410

Mass. at 21 (citing *Guzman*, 409 Mass. at 566); *Rohn Industries*, 887 A.2d at 996 (identifying same

four exceptions to general rule). BT Prime's Count XVI is based on the "mere continuation"

exception. (Amended Complaint ¶ 203 ("Nukkleus, Nukkleus Bermuda, and CMH Bermuda are a

continuation of the business of Forexware [US] and are successors-in-interest to Forexware

[US]").)

36.    The elements of a successor liability claim under a "mere continuation" theory are

(1) a common identity of officers, directors, and stockholders of the predecessor and new

corporations, and (2) the existence of only one corporation following a transfer.[6] *See, e.g.,*

*Magnolia's v. Artesian*, C.A. No. S11C-04-013-ESB, at *7 (Del. Super. Ct. Sep. 19, 2011)

("Meridian and Artesian both remained as separate legal entities after the asset sale."); *Milliken &*

*Co. v. Duro Textiles, LLC*, 451 Mass. 547, 557-58 (Mass. 2008) (quoting *McCarthy v. Litton*

*Indus., Inc.*, 410 Mass. 15, 23 (1991) ("[T]he indices of a 'continuation' are, at a minimum:

continuity of directors, officers, and stockholders; *and the continued existence of only one*

*corporation after the sale of assets*."(emphasis added)).

37.    It is well-established that a selling corporation's liabilities are not imposed on the

purchaser absent, *inter alia*, a finding that the purchaser is a mere continuation of the seller. *Rohn*

*Industries*, 887 A.2d at 996l; *Milliken*, 451 Mass. 547 at 556 (Mass. 2008) (same under

Massachusetts law). Where a corporation, "ceases all of its ordinary business operations, which

are assumed by another corporation, and liquidates its assets," successor liability will be imposed.

*Id.* at 558. However, where one corporation transfers only a portion of its operations to a second

_____

[6] The necessary elements of a claim seeking successor liability under a "mere continuation" theory are the same under Massachusetts and Delaware law.

corporation, the second corporation is not a continuation "because the original corporation survived the sale of a portion of its assets and continued to" do business. *Id*. at 558–59; *see also Genentech, Inc. v. Arendal Mgmt., Inc.*, 92 Mass. App. Ct. 1108 (Mass. App. Ct. 2017) (affirming trial court's decision not to impose successor liability despite alleged predecessor company closing down and evidence of asset transfers of software from alleged predecessor company because alleged successor company "did not carry on the operations" of predecessor); *In re Asbestos Litigation*, 517 A.2d 697, 700 (Del. Super. Ct. 1986) (finding corporation not a mere continuation where it purchased "the land, buildings, fixtures, machinery, equipment, raw materials and supplies, work in progress and finished goods inventories, and various records and files relating to K M's Industrial Products Division. In addition, Nicolet received the patents, trademarks, trade names and the good will related to the trademarks and trade names" because the purchaser did not purchase the whole company).

38.    Here, Forexware US continued to operate following the purchase of certain assets by Nukkleus US and BT Prime has not alleged anything to the contrary in the Amended Complaint. (*See* Amended Complaint ¶¶ 188–204.) This alone bars BT Prime's successor liability cause of action. *Dyer*, 2003 WL 21500661, at *2 ("Where the seller continues to exist after the asset sale, the purchaser cannot be considered the same company, or alter ego, of the seller.").

39.    BT Primes alleges in a conclusory fashion that CMH Bermuda transferred substantially all of Forexware US's assets without providing any allegations as to what assets remained in Forexware US's possession following the transaction (Amended Complaint ¶ 191) or that Forexware US "cease[d] all of its ordinary business operations, which are assumed by another corporation, and liquidate[d] its assets." *Milliken*, 451 Mass. at 556.

**C. BT Prime Fails to Plead That There is a Live and Actual Controversy Requiring a Declaratory Judgment in Count XVI.**

40.      BT Prime fails to plead a live and actual controversy sufficient to state a claim for

a declaratory judgment under Count XVI.

41.      In order to properly plead a declaratory judgment, the dispute must be "definite and

concrete, touching the legal relations of parties having adverse legal interests; and that it be real

and substantial and admi[t] of specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*EMC Corp. v. Chevedden*, 4 F. Supp. 3d 330, 335 (D. Mass. 2014) (internal quotation marks

omitted). "[T]he question in each case is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune,

Inc. v. GenenTech, Inc.*, 549 U.S. 118, 127 (2007).

42.      Here, BT Prime is pleading in the hypothetical based on the presumption that

Forexware US is found liable to BT Prime in any way. There is no certainty that Forexware US

will be found liable to BT Prime. Moreover, BT Prime takes its hypothetical one step further

because even if the Court were to find liability against Forexware US, in order for BT Prime to be

entitled to plead successor liability, Forexware US would have to be unable to pay any judgment

against it. Therefore, BT Prime bases its successor liability cause of action on two hypothetical

scenarios, each of which are required to occur before BT Prime's declaratory judgment would

actually be live and actual: (1) the Court finds Forexware US liable to BT Prime; and (2) Forexware

US is unable to pay for any liability.

43.      There is no live and actual controversy sufficient for BT Prime to seek a declaratory

judgment.

## II.   BT PRIME FAILS TO PLEAD SUFFICIENT FACTS TO SATISFY THE NECESSARY ELEMENTS OF ITS COUNT XV AGAINST CMH US.

44.      CMH US joins the Malta Defendants' motion to dismiss (Dkt. No. 185), fully briefed and scheduled for a hearing on June 2, 2020 (Dkt. No. 195), but reiterates the arguments herein for the Court's convenience.

45.      BT Prime's Count XV seeks to hold the CMH US jointly and severally liable for any liability attributable to the Forexware Defendants, without pleading the facts necessary to meet the elements of an alter ego theory or to otherwise pierce the corporate veil. As with Count XVI, there is also no live and actual controversy required for a declaratory judgment relief, which is clear even from BT Prime's own statement that it only seeks a declaratory judgment "*to the extent that* any of the Forexware Defendants are liable to the Debtor . . . ." (Amended Complaint ¶ 187 (emphasis added.))

### A.   Plaintiff Fails to Allege Sufficient Facts, or State Any Non-Conclusory Allegations, That Would Support Piercing of the Corporate Veil.

46.      It is well-established that corporations "ordinarily are regarded as separate and distinct entities." *Scott v. NG US 1, Inc.*, 450 Mass. 760, 766 (Mass. 2008). "[T]he presumption of corporate separateness may be overcome only 'in rare particular situations in order to prevent gross inequity.'" *Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 128 (1st Cir. 2006) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614 (Mass. 1968)); *see also Birbara v. Locke*, 99 F.3d 1233, 1239 (1st Cir. 1996) (collecting cases) ("the Supreme Judicial Court has repeated that under Massachusetts law, the corporate veil will only be pierced in rare situations.").

47.      Failing to plead sufficient facts to support the alter ego theory warrants dismissal.[7] *See, e.g., Techtarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 357 (D. Mass. 2010)

---

[7] Massachusetts courts look at twelve factors in determining whether companies may be considered alter egos of one

(dismissing alter ego cause of action where plaintiff failed to allege facts in support of nine of the twelve factors and only alleged joint ownership, pervasive control, and intermingling of business assets). Moreover, the supporting allegations, unlike here, must be pleaded in a non-conclusory fashion. *Omni-Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644, 648 (D. Mass. 1989) (denying amendment to include alter ego cause of action in part because it was pleaded in a conclusory fashion).

48.    BT Prime's alter ego theory rests on the conclusory allegations that Emil Assentato "controlled, directly or indirectly, each of the Forexware Defendants" and that he "controlled and directed the activities of each of the Forexware Defendants."  (Amended Complaint ¶¶ 179, 182.) Even if these formulaic recitations were supported by factual allegations, which they are not, showing mere ownership and control comes well-short of what is needed to pierce the corporate veil. *Techtarget*, 746 F. Supp. 2d at 357 (dismissing alter ego cause of action where plaintiff alleged joint ownership, pervasive control, and intermingling of business assets without addressing remaining factors); *see also Locomotive Engineers v. Springfield Terminal*, 210 F.3d 18, 29 (1st Cir. 2000) ("Common ownership by itself is insufficient to pierce the veil."); *Scott v. NG US 1, Inc.*, 450 Mass. 760, 768 (Mass. 2008) ("[C]ontrol, even pervasive control, without more, is not a sufficient basis for a court to ignore corporate formalities.").

49.    BT Prime does not even attempt to address the remaining factors relevant to determining whether an alter ego claims is sufficiently pleaded. Neither does BT Prime claim, let

---

another: (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud. *Attorney General v. M.C.K., Inc.*, 432 Mass. 546, 557 n. 19 (Mass. 2000) (citing *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985)).

alone allege any facts in support, insolvency of any of the entities during the litigation so that

judgment enforcement would be impossible without CMH US being jointly and severally liable.

*See Omni-Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644, 647 (D. Mass. 1989)

(denying amendment to include alter ego cause of action in part because there was no "evidence

from which it could reasonably be inferred that HEA is without assets or funds to satisfy a

judgment against it.").

### B. The Court Should Dismiss Count XV Because BT Prime Fails to Plead that there Is a Live and Actual Controversy.

50.     The question of whether CMH US should be jointly and severally liable "*[t]o the

extent* that any of the Forexware Defendants are liable" (Amend. Compl. ¶ 185 (emphasis added))

is based on "uncertain and contingent events that may not occur as anticipated or may not occur at

all" and is thus not adequate for declaratory judgment. *Massachusetts Ass'n of Afro-American

Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir. 1992) (per curiam) ("the critical

question concerning fitness for review is whether the claim involves uncertain and contingent

events that may not occur as anticipated or may not occur at all").[8]

51.     In order to properly plead a declaratory judgment, the dispute must be "definite and

concrete, touching the legal relations of parties having adverse legal interests; and that it be real

---

[8] In contrast to the very different Count IX of the Original Complaint, which the Court upheld because "[t]he complaint allege[d] (albeit in the alternative) that the Debtor has incurred such liability," there are no such allegation of liability pertaining to the current Count XV. (Memorandum of Decision on Motions to Dismiss, 43–44.) To the contrary, the allegations in the Amended Complaint make it clear that the relief sought in Count XV would be relevant *only if and once* liability is adjudicated. (Amended Complaint ¶ 187.) In noting that the original Count IX did not lack an actual controversy, the Court noted that "[t]he claims register in this case shows that Boston Prime (In Special Administration) has filed a proof of claim in this case for $7.2 million for liability arising from payment of monies from Boston Prime to BT Prime and that no objection has been filed to that proof of claim. When a proof of a claim is filed under 11 U.S.C. § 501, the claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a)." (*Id.* at 44 n.9.) The same rationale does not apply here because no liability has been pleaded or established yet. To the contrary, Count XV seeks a declaratory judgment "*to the extent that* any of the Forexware Defendants are liable to the Debtor . . . ." (Amended Complaint ¶ 187 (emphasis added.))

and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *EMC Corp. v. Chevedden*, 4 F. Supp. 3d 330, 335 (D. Mass. 2014) (internal quotation marks omitted). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. GenenTech, Inc.*, 549 U.S. 118, 127 (2007).

52.     There is no live controversy here necessitating that the Court hold that CMH US is jointly and severally liable for any potential judgment against the Forexware Defendants. BT Prime pleads that "[b]ecause Defendants dispute that the Forexware Defendants should be considered a single integrated business such that they should be jointly and severally liable to the Debtor, an actual and judicable controversy exists." (Amended Complaint ¶ 186.)

53.     But this is far from what is required for a declaratory judgment claim to survive a motion to dismiss as none of the Forexware Defendants have been adjudicated to be liable to BT Prime, much less that whichever Forexware Defendant *may* owe on a judgment cannot afford to pay on that yet unknown judgment. *See Massachusetts Ass'n of Afro-American Police*, 973 F.2d at 20 (per curiam) ("the critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all").

## **CONCLUSION**

The Court should dismiss BT Prime's Counts XV and XVI of the Amended Complaint in their entirety for the above-referenced reasons.

Dated: May 26, 2020                          Respectfully submitted,

                                             _____
                                             Stefan Savic (BBO No. 688338)
                                             Brian L. Grossman*
                                             **SHIPKEVICH PLLC**
                                             165 Broadway, STE 2300
                                             New York, New York 10006
                                             Telephone:     (212) 252-3003
                                             Facsimile:     (888) 568-5815
                                             ssavic@shipkevich.com
                                             bgrossman@shipkevich.com
                                             *Admitted Pro Hac Vice

                                             *Attorneys for Defendants Currency Mountain Holdings
                                             Limited, FXDD Malta, Ltd., Currency Mountain
                                             Holdings LLC, Nukkleus, Inc., Nukkleus Bermuda
                                             Limited, and Currency Mountain Holdings Bermuda,
                                             Ltd*

## <u>CERTIFICATION PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(b)</u>

The undersigned counsel hereby certifies that the New Defendants' counsel conferred with BT Prime's counsel prior to filing of this motion and that BT Prime's counsel indicated that BT Prime would oppose the motion.

## <u>CERTIFICATE OF SERVICE</u>

I, Stefan Savic, hereby certify that on the 26th day of May, 2020, I caused copies of the

within document to be served through the Court's CM/ECF system upon the following registered

electronic filers appearing in this adversary proceeding:

Harold B. Murphy, Esq.
Charles R. Bennett, Jr., Esq.
Shawn Lu, Esq.
Murphy & King, P.C.
One Beacon Street
Boston, Massachusetts 02108

*Attorneys for BT Prime Ltd.*

Respectfully submitted,

_____
Stefan Savic (BBO No. 688338)