UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| In re<br><br>BT PRIME LTD.,<br><br>　　　　　　　　　　Debtor<br><br>BT PRIME LTD.,<br><br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>BOSTON TECHNOLOGIES POWERED<br>　BY FOREXWARE LLC, f/k/a<br>　FOREXWARE LLC,<br>CURRENCY MOUNTAIN HOLDINGS<br>　LIMITED, f/k/a FOREXWARE<br>　MALTA HOLDINGS LTD.,<br>FXDIRECTDEALER, LLC,<br>FXDD MALTA LTD.,<br>CURRENCY MOUNTAIN HOLDINGS<br>　LLC,<br>NUKKLEUS, INC.,<br>NUKKLEUS BERMUDA LIMITED, and<br>CURRENCY MOUNTAIN HOLDINGS<br>　BERMUDA, LTD, | Chapter 11<br>Case No. 15-10745-FJB<br><br><br><br><br><br><br>Adversary Proceeding<br>No. 16-1178 |

**MEMORANDUM OF DECISION ON**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

　　　This adversary proceeding is before the Court on a motion by five defendants for summary judgment on five counts of the Amended Complaint. I address them in the order presented.

**SUMMARY JUDGMENT STANDARD**

　　　A party is entitled to summary judgment only upon a showing that there is no genuine dispute of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a rational factfinder to

resolve the issue in favor of either party. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

**COUNT XVI**

In Count XVI of the Amended Complaint, plaintiff and reorganized chapter 11 debtor BT Prime Ltd. ("the Debtor," or "the plaintiff") seeks declaratory relief against three defendants, Currency Mountain Holdings Bermuda, Ltd. ("CMH Bermuda"), Nukkleus, Inc. ("Nukkleus"), and Nukkleus Bermuda Limited ("Nukkleus Bermuda") (collectively, the "Nukkleus Defendants"): specifically that each is jointly and severally liable with the other five defendants (collectively, the "Forexware Defendants") for any liability the latter are determined in this adversary proceeding to have to BT Prime. The theory of liability, as articulated in the caption of Count XVI, is that the business being carried on by the Nukkleus Defendants is a mere continuation of the business of the Forexware Defendants. The Debtor now contends that the facts articulated in Count XVI would also support relief under a theory of *de facto* merger.

    a. **Statute of Limitations**

The Nukkleus Defendants seek summary judgment as to Count XVI on two grounds. The first is that Count XVI is time-barred by the applicable statute of limitations. They contend that the state whose law governs this count is Delaware; that under Delaware law, the statute of limitations for successor liability claims is three years (for which they cite, without explanation, Del. Code Ann. tit. 10, § 8106); that this cause of action accrued on May 24, 2016, the date of the asset purchase agreement pursuant

2

to which the Nukkleus Defendants acquired and allegedly are carrying on the business of the Forexware Defendants, and therefore that the three-year limitations period expired on May 24, 2019, before the date on which the complaint in this adversary proceeding was amended with Count XVI; and that Count XVI does not relate back to the filing of the original complaint. The Debtor responds that this count is governed by Massachusetts law, not Delaware law; that, in any event, this count relates back to the date of the original complaint and therefore is not untimely; and, in the alternative, that Count XVI should be viewed as an equitable claim to enforce a judgment, subject to a 20-year limitations period.

The first step is to address the choice of law question, to determine which state's law governs Count XVI. The Court has addressed the choice of law once before in this adversary proceeding, albeit not as to the present count; Count XVI and its defendants were added to this adversary proceeding only later. At that earlier juncture, the Court was addressing the Rule 12(b)(6) motions of the initial four Forexware Defendants. No party had expressly addressed the choice of law issue as to the counts that did not arise under the Bankruptcy Code.[1] The moving parties had framed their arguments entirely under Massachusetts law, and the Debtor had responded in kind. Each party had thus implicitly taken the position that the counts in issue were governed by Massachusetts law. The Court stated:

> In view of the parties' positions and agreement on the issue, and because it appears from the alleged facts that the Commonwealth of Massachusetts has been the center of the Debtor's activities (conducted first through BT Prime and later through Forexware) at all relevant times, I hold that Massachusetts law governs as to Counts I-IV, IX, and XV.

That ruling did not apply to the present Count XVI. Nor was it meant to bind defendants not yet joined in this proceeding.

---

[1] Jurisdictions having connections of which the Court has been made aware include Massachusetts, New York, Delaware, Malta, Bermuda, the British Virgin Islands, the United Kingdom, and Japan. The License Agreement, attached to and incorporated by reference into the Complaint provides that its validity, construction, and performance shall be governed by Massachusetts law. The initial APA, also attached to and incorporated by reference into the Complaint, states that it shall be governed and construed in accordance with New York law.

The Debtor argues that the Court should judicially and equitably estop the Nukkleus Defendants from now advancing a position different from that which the Forexware Defendants advanced earlier. The argument fails because the Nukkleus Defendants were not among the defendants who earlier urged the application of Massachusetts law. It makes no difference that the Nukkleus Defendants are under common control with the other defendants and are represented by the same firm as represented two of them in that matter. Moreover, the earlier position was taken as to other counts, not Count XVI; the governing law may vary according to the nature of the count. The new defendants are entitled to be heard regarding the law that governs Count XVI.

The Nukkleus Defendants urge the Court to follow Massachusetts conflict of laws principles, which they contend would require application of Delaware law. They do not explain why this court should follow Massachusetts conflict of laws principles. In diversity cases, federal courts must apply the choice-of-law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Putnam Resources v. Pateman*, 958 F.2d 448, 464 (1st Cir. 1992). But this adversary proceeding arises in the federal courts' bankruptcy jurisdiction, under 28 U.S.C. § 1334(b) via 28 U.S.C. § 157(a) and (b), not in diversity. Perhaps the diversity rule should apply also in bankruptcy, but that is by no means clear. I have searched in vain for guidance on the issue or, barring any, for federal choice-of-law principles.

Still, the actual choice-of-law principles being urged upon me, though derived from Massachusetts law, which itself looks to the Restatement (Second) of Conflict of Laws, § 6, would likely be sound law even if, exercising bankruptcy jurisdiction, a federal court were obligated to apply choice-of-law principles of its own. In other words, it likely makes no difference whether I follow Massachusetts law or apply federal choice of law principles. In either event, I would take my bearings largely from the Restatement (Second) of Conflict of Laws and the considerations that the Massachusetts Supreme Judicial Court would bring to bear.

The Court of Appeals has summarized the Massachusetts approach as follows:

> Massachusetts courts take a flexible interest-based approach to conflict of laws issues and will consider a wide variety of factors in choosing the applicable law. *Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 632 N.E.2d 832, 834 (1994). These factors include those listed in the Restatement (Second) Conflict of Laws: (1) the needs of the interstate and international system, (2) the policies of the forum, (3) the policies of other interested jurisdictions, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability and uniformity of result, and (7) ease of applicability. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662, 669 (1985) (citing Restatement (Second) Conflict of Laws § 6 (1971)). They also include factors proposed by conflict of laws commentators: (1) predictability, (2) maintaining interstate and international order, (3) simplifying the judicial task, (4) advancing the interests of the forum, and (5) applying the better legal rule. *Bushkin Assocs.*, 473 N.E.2d at 670 n. 7 (citing Leflar, American Conflicts Law § 109, at 195 (3d ed.1977)). The SJC has indicated that it "feel[s] free ... to borrow from any of the various lists to help focus ... attention on the considerations particularly relevant to the case...." *Bushkin Assocs.*, 473 N.E.2d at 670.

*Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 30 (1st Cir. 1997). This is high-level guidance. At a middle level, the Nukkleus Defendants also cite to § 145 of the Restatement (Second), which articulates general principles specific to tort claims, Count XVI being a species of business tort:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). Section 145 has been followed in Massachusetts.

See *Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 649 (1994), and is useful in applying the

5

Restatement's general rules to tort claims in particular. It would have the court apply the law of that state that has "the most significant relationship to the occurrence and the parties under the principles stated in § 6," determined according to certain contacts.

Against this backdrop, the Nukkleus Defendants ask the Court to apply Delaware law for the following reasons: (i) that Count XVI is about an Asset Purchase Agreement (APA) between Nukkleus, which is a Delaware corporation, and Forexware US, which is a Delaware limited liability company; (ii) that Delaware law should apply to a dispute where a contract that was primarily negotiated by Delaware entities is at issue; (iii) that the law of the state of incorporation should apply to disputes over the internal workings of a corporation; (iv) that Delaware has a strong interest in resolving disputes involving the ownership of shares in, and the governance of, corporations formed under its laws; (v) that Delaware has a strong interest in the effective administration of the law governing corporations and limited partnerships formed under its laws; (vi) that Delaware has a strong interest in seeing that companies and corporations formed under its law have disputes resolved in a predictable manner; and (vii) that a court should look to the law of the state of incorporation to determine a corporation's liability.

For the following reasons, I find none of these contacts to Delaware and interests of Delaware to be weighty or compelling. First, contrary to reasons (i) and (ii) above, Count XVI is not about the APA and is not a contract dispute; the APA figures into Count XVI not as the subject of dispute between the parties to it but as the means by which two defendants cooperated in further alienating from the plaintiff Debtor certain assets, business, and value to which the creditors of the Debtor have a better claim. The business that those creditors did with the Debtor, and the business that the Nukkleus Defendants are alleged to continue to carry on, was and continues to be centered in Massachusetts. The next four reasons, (iii) through (vi), do not apply because Count XVI is not about the internal workings of, corporate governance of, or ownership of shares in the Delaware-incorporated entities,

6

Nukkleus and Forexware US. It is about the effects of their transaction on the Debtor and its creditors. And reason (vii), that "Massachusetts law requires that a court look to the law of the state of incorporation to determine the corporation's liability," is a deceptively incomplete quote from a decision of the District Court. What the District Court in fact said was, "Massachusetts law requires that a court look to the law of the state of incorporation to determine the corporation's liability *to its stockholders or creditors*." *Hoffman v. Optima Sys., Inc.*, 683 F. Supp. 865, 872 (D. Mass. 1988) (emphasis added). With its omitted words restored, it is clear that the cited language does not apply here, where the matter at issue is not the liability of the corporation to its stockholders or creditors.

In short, the Nukkleus Defendants have advanced no significant Delaware contacts of the Count XVI *tort* claim. Section 145 of the Restatement (Second) of Conflict of Laws requires that I apply the law of the state with the most significant relationship to the occurrence and the parties, taking into account (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. In view of the numerosity of the parties, and the high diversity to their places of incorporation and business, the Court earlier focussed instead on factors (a), (b), and (d), to arrive at its conclusion that Massachusetts law should govern, as the center of the Debtor's activities and as such, as the center of the business that the Debtor alleges was appropriated first by the Forexware Defendants and then by the Nukkleus Defendants. The Nukkleus Defendants have adduced no basis for concluding otherwise as to Count XVI. Their motion for summary judgment on the statute of limitation, based on a Delaware statute of limitations, is contingent on the application of Delaware law.[2] Having determined that they have failed to establish the

---

[2] In its reply brief, the Nukkleus Defendants argue that even if Massachusetts law governs, Count XVI is barred by a three-year Massachusetts state of limitations. As the argument was made in a reply brief, one to which no response is required, the Court cannot treat it as part of the motion.

applicability of Delaware law, I need not address the further issues of relation back and the Debtor's alternate characterization of its claim.

### b.  Continuation of the Transferor

The Nukkleus Defendants next argue that they are entitled to summary judgment on Count XVI because, in order to establish successor liability on the mere continuation theory, it is necessary to prove that, after the transfer of assets, the transferor ceased to exist, such that only one business, that of the transferee, continued after the transfer; but it is undisputed, they contend, that after the transfer of the Debtor's business from Forexware to the Nukkleus Defendants, Forexware continued in business. The Debtor responds, correctly, that the allegations of Count XVI support the imposition of successor liability on a de facto merger theory, and that evidence of the continuation of Forexware after the transfer is not necessarily inconsistent with success on that theory. As the Court stated earlier, the test is whether "the parties achieved what amounts to a merger in a way which was inequitable to the seller's creditors." *Nat'l Gypsum Co. v. Cont'l Brands Corp.*, 895 F. Supp. 328, 342 (D. Mass. 1995).  "Each case must be decided on its specific facts and circumstances." *Cargill, Inc. v. Beaver Coal & Oil Co.*, 424 Mass. 356, 362 (1997). No one factor is essential to a determination of liability for a de facto merger. *Nat'l Gypsum Co.*, 895 F.Supp. at 342. The argument of the Nukkleus Defendants, even if correct as to the fact of continuation to an appreciable extent, cannot establish that they are entitled to judgment on Count XVI as a matter of law.

**COUNTS VII, XI, AND XII**

In Counts VII, XI, and XII, the Debtor seeks to recover certain transfers from defendant FXDD Malta as preferential and constructively fraudulent under 11 U.S.C. §§ 547 and 548(a)(1)(B). By this motion for summary judgment, FXDD Malta seeks summary judgment as to each of these counts on the basis of the affirmative defenses in 11 U.S.C. §§ 546(g) and 548(d)(2)(D).  Subsection 546(g) creates a safe harbor for certain transfers.  It states:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer made by or to (or for the benefit of) a swap participant or financial participant, under or in connection with any swap agreement and that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(g). This is an affirmative defense to avoidance under § 548(a)(1)(B) and § 547. It requires the defendant to prove, as to each challenged transfer, that it was made by, to, or for the benefit of a swap participant or financial participant, under or in connection with any swap agreement, and that it was made before the commencement of the case. Subsection 548(d)(2)(D) is also an affirmative defense to avoidance under § 548. It states that, in § 548, "a swap participant or financial participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer[.]" 11 U.S.C. § 548(d)(2)(D). It requires proof of virtually the same elements as does § 546(g).

When an affirmative defense is advanced as a basis for summary judgment, the defendant, as the party who would bear the burden of proof at trial, must support its motion with evidence as to each essential element of the defense and show as to each that that there is no genuine dispute of fact. The court must view all evidence in the light most favorable to the nonmoving party and indulge all inferences favorable to that party.

FXDD Malta must show as to each transfer that it was made under or in connection with "any swap agreement." Swap agreement is a defined term whose sprawling definition includes many types of agreements that are swap agreements per se (listed in subsection (53B)(a)(i)), other agreements that are "similar to" those enumerated and otherwise satisfy subsection (53B)(a)(ii), and any security agreements related to any agreement in clause (i) through (v) of subsection (53B)(a). See 11 U.S.C. § 101(53B). As a preliminary matter, it is incumbent on a party invoking a swap agreement defense to specify how it contends this definition of swap agreement is satisfied. FXDD Malta has failed to do so. It has quoted certain parts of the definition to the Court—specifically, those in subsections (53B)(a)(i)(II) and (III), (53B)(a)(ii) (similar to), and (53B)(a)(vi) (security agreement related to)—but has not indicated

which of these (and which parts of these), if any, it is relying on.[3] It is not the court's duty to guess at how a defendant is building its case, and the Court can hardly expect the Plaintiff to address a defense not fully articulated. This alone would require denial of summary judgment as to these counts, but there are at least two further reasons.

First, the customer agreement that FXDD Malta contends is the swap agreement pursuant to which the transfers in question were made is not, at least on its face, one to which BT Prime is a party. Also, FXDD Malta contends that the agreement on which it is relying is one of August 4, 2014, but the agreement it has adduced is dated April 8, 2014.  And the deposition testimony of George Popescu that is cited to establish that he was a director of BT Prime on the date of execution of this agreement in fact establishes his directorship as of January 2015.  Perhaps FXDD Malta can remedy these problems at trial. For now, there is a genuine issue of material fact as to the existence of a swap agreement with BT Prime.

Second, it is not enough just to adduce the alleged 33-page agreement. FXDD Malta is obligated to identify the portions and features of the agreement that it contends make it a swap agreement and specify how they make it a swap agreement.  Again, it is not the court's job to make the defendant's case for it.

These deficiencies in the motion make it unnecessary for the Court to address the other issues raised by the Debtor in opposition. The Court will deny summary judgment as to Counts VII, XI, and XII.

**COUNT XIII**

In Count XIII, the Debtor seeks turnover from (among others) FXDD Malta under 11 U.S.C. § 542 of $1.3 million that was in the Debtor's FXDD Trading Account on February 3, 2015.  FXDD Malta seeks summary judgment as to this count on the basis of evidence that the monies in issue had been placed in the Debtor's account by a third party, Boston Prime. On the basis of this evidence, FXDD Malta would

---

[3] In addition, if FXDD Malta is relying on one or more of the per se agreements in subsection (53B)(a)(i), it must specify whether it contends that its agreement *is* a per se agreement or merely that, for purposes of subsection (53B)(a)(ii), its agreement is similar to the cited per se agreement.

have the Court conclude that the funds belonged to Boston Prime, not to the Debtor. It would follow that the funds were not the Debtor's when it later filed its bankruptcy petition and therefore are not subject to turnover under § 542.

The Court will deny summary judgment as to this count because, from the alleged fact that the funds had been placed in the Debtor's account by Boston Prime, it does not follow as a matter of law that the funds belonged to Boston Prime and not the Debtor. FXDD Malta cites no law for that proposition and no evidence as to the circumstances and terms under which the alleged transfer by Boston Prime was made.

**CONCLUSION**

For the above reasons, a separate order will enter denying the motion for summary judgment.

Date: September 1, 2021

_____
Frank J. Bailey
United States Bankruptcy Judge